**Janella MATTHEW, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A05–0801–CR–17.**

Court of Appeals of Indiana.

Aug. 29, 2008.

Kent D. Zepick, Fishers, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

### Case Summary and Issue

Following a bench trial, Janella Matthew appeals her conviction of battery, a Class A misdemeanor.[1] Matthew raises the issue of whether sufficient evidence supports her conviction. Concluding sufficient evidence exists, we affirm.

### Facts and Procedural History

On May 27, 2007, Matthew, her boyfriend, and three of her children, including twelve-year-old J.M. and seven-year-old B.M., were playing cards on Matthew's

---

1. Matthew argues, and the State concedes, that the trial court exercised its authority under Indiana Code section 35–50–2–7(b) to enter judgment of conviction of battery as a Class A misdemeanor. However, the abstract of judgment indicates that Matthew was convicted of battery as a Class D felony. We remand with instructions that the trial court correct the abstract of judgment.

front porch. B.M. threw popcorn at J.M., who responded by hitting B.M. in the face. Matthew then tried to hit J.M., but missed. J.M. called Matthew a "fucking bitch," transcript at 29, ran inside and shut herself in the bathroom. Matthew eventually got into the bathroom and hit J.M. on her arm and legs with a closed fist. J.M. testified that these blows hurt.

J.M. then pushed Matthew out of the way and ran upstairs to her bedroom. The bedroom did not have a lock, so J.M. "put [her] body against the door and pushed it shut," but Matthew pushed open the door and again began hitting J.M. *Id.* at 14. Matthew hit J.M. about ten times with her hand and also struck her with a belt. J.M had covered herself with a blanket, and at one point, Matthew agreed that she "tried to take the blanket off of [J.M.] so that [she] could get a better shot at her with the belt." *Id.* at 86. J.M. testified that these blows also hurt. During this altercation, J.M. kicked Matthew, hit her with her arms, "call[ed] her names and told her to get off of [J.M.]." *Id.* at 32.

J.M. then went to Kathy Robinson's house. J.M. was friends with Robinson's children. J.M. told Robinson that she and Matthew had been in a fight. Robinson noticed a bruise on J.M.'s arm, welts on her legs, and a scratch on her back. Robinson then called the police.

On May 30, 2007, the State charged Matthew with battery, a Class D felony. On November 19, 2007, the trial court held a bench trial and found Matthew guilty. Matthew now appeals.

*Discussion and Decision*

### I. Standard of Review

 When reviewing a claim of insufficient evidence, we will not reweigh evidence or judge witnesses' credibility. *Grim v. State,* 797 N.E.2d 825, 830 (Ind.Ct. App.2003). We will consider only the evidence favorable to the judgment and the reasonable inferences drawn therefrom. *Id.* We will affirm a conviction if the lower court's finding is supported by substantial evidence of probative value. *Id.*

 Our supreme court has recently summarized our standard of review when assessing claims of insufficient evidence.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder *could* find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State,* 867 N.E.2d 144, 146–47 (Ind.2007) (quotations and citations omitted) (emphasis in original).

### II. Sufficiency of the Evidence

The trial court found Matthew guilty of battery as a Class D felony. "A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery." Ind.Code § 35–42–2–1(a). The subsection under which the State charged Matthew states that the offense is "a Class D felony if it results in bodily injury to . . . a person less than fourteen (14) years of age and is committed by a person at least eighteen

(18) years of age." Ind.Code § 35–42–2–1(a)(2)(B).

### A. Matthew's Age

■ First, Matthew argues that insufficient evidence exists to support a finding that she was at least eighteen years old at the time of the offense.

■ When a person's age is an element of the offense, the State must prove this element beyond a reasonable doubt. *Staton v. State*, 853 N.E.2d 470, 473 (Ind. 2006). The State must present "more than a mere scintilla of evidence," and must introduce evidence of "substantial and probative value." *Bowens v. State*, 578 N.E.2d 377, 379 (Ind.Ct.App.1991). The State need not introduce evidence of a person's exact age at the time of the misconduct. *See Warren v. State*, 701 N.E.2d 902, 907 (Ind.Ct.App.1998) ("Time is not of the essence in sex crimes against children."), *trans. denied; Crabtree v. State*, 547 N.E.2d 286, 290 (Ind.Ct.App.1989) (affirming conviction where State did not introduce evidence of the victim's date of birth, but introduced testimony indicating that the victim was fifteen years old at the time of the misconduct), *trans. denied.* The State may prove a defendant's age entirely through circumstantial evidence. *Staton*, 853 N.E.2d at 474.

Trial testimony indicates that J.M. was twelve years old and that Matthew has an older son who was living with his father at the time of the incident. This evidence is sufficient to support the inference that Matthew was at least eighteen years old at the time of the incident. *See Altmeyer v. State*, 519 N.E.2d 138, 141 (Ind.1988) (concluding that the defendant's testimony that he was married and had an eleven-year-old son was sufficient to establish that the defendant was at over sixteen years old); *Marshall v. State*, 643 N.E.2d 957, 963 (Ind.Ct.App.1994) (concluding that evidence that the defendant was a deputy marshal, married, and had two children at least six years old was sufficient to prove that the defendant was over sixteen), *trans. denied.* Although the State did not introduce any documentation showing that Matthew was at least eighteen, the trial court was permitted to "apply its common sense to this record," *Staton*, 853 N.E.2d at 475, and infer that Matthew was at least eighteen.

### B. Reasonable Corporal Punishment

■ A parent has a right to use "reasonable or moderate physical force to control behavior." *Willis v. State*, 888 N.E.2d 177, 180 (Ind.2008). However, "the potential for child abuse cannot be taken lightly," and "the State has a powerful interest in preventing and deterring the mistreatment of children." *Id.* In balancing these principles, our supreme court has adopted the following standard: "A parent is privileged to apply such reasonable force or to impose such reasonable confinement upon his [or her] child as he [or she] reasonably believes to be necessary for its proper control, training, or education." *Id.* at 182 (quoting Restatement of the Law (Second) Torts, § 147(1) (1965)). In determining whether the force or confinement is reasonable, the following factors should be considered:

(a) whether the actor is a parent;

(b) the age, sex, and physical and mental condition of the child;

(c) the nature of his offense and his apparent motive;

(d) the influence of his example upon other children of the same family or group;

(e) whether the force or confinement is reasonably necessary and appropriate to compel obedience to a proper command;

(f) whether it is disproportionate to the offense, unnecessarily degrading, or

likely to cause serious or permanent harm.

*Id.* (quoting Restatement, *supra,* § 150). When a defendant raises the defense of parental privilege, "the State must prove that either: (1) the force the parent used was unreasonable or (2) the parent's belief that such force was necessary to control her child and prevent misconduct was unreasonable." *Id.* As with all sufficiency reviews, we will defer to the trial court's judgment if "sufficient evidence of probative value [exists] to support the conclusion of the trier of fact." *Id.* at 183.

Although we recognize that Matthew's actions did not cause J.M. permanent physical damage, and that Matthew had verbally warned J.M. regarding her behavior earlier in the day, *see id.* (recognizing that the parent had "used progressive forms of discipline"), we are unable to conclude that the trial court's decision is not supported by sufficient evidence. Matthew struck J.M. repeatedly with a closed fist[2] in the downstairs bathroom, and then, after J.M. managed to escape to her room, Matthew forced her way into the room and continued hitting J.M. The trial court specifically stated that it found Matthew's following J.M. to her bedroom to continue hitting her to have "crossed from reasonable to unreasonable." Tr. at 98. We also note that after J.M. covered herself with a blanket, Matthew admittedly attempted to remove a blanket in order to have more direct access for hitting J.M. Although we recognize the difficulty caused by rebellious children, we also recognize that at the appellate level, we are to look to the evidence supporting the verdict, and will not reweigh the evidence. We conclude that under these circumstances, sufficient evidence exists to support the trial court's finding that Matthew's hitting J.M repeatedly with a closed

fist and a belt—both in the bathroom, and then, after J.M. escaped, in the bedroom—was not reasonable.

*Conclusion*

We conclude sufficient evidence exists to support Matthew's conviction. We remand to allow the trial court to correct the abstract of judgment to indicate that it entered judgment as a Class A misdemeanor instead of as a Class D felony.

Affirmed and remanded.

RILEY, J. concurs.

BAKER, C.J. dissents with opinion.

BAKER, Chief Judge, dissenting.

Although I very much agree in principle with the result reached by the majority, I believe that we are compelled by *Willis v. State* to reverse Matthew's conviction. 888 N.E.2d 177 (Ind.2008). In *Willis*, the defendant's eleven-year-old son took his mother's clothes to school without her permission and gave them to a classmate. After his teacher informed Willis of the exchange, Willis confronted her son, who denied taking the clothes. She then warned him that if he did not tell the truth, he would be punished. In response,

> Willis instructed J.J. to remove his pants and place his hands on the upper bunk bed. J.J. complied, and Willis proceeded to strike him five to seven times with either a belt or an extension cord. Although trying to swat J.J. on the buttocks, his attempt to avoid the swats resulted in some of them landing on his arm and thigh leaving bruises. J.J. testified that during this exchange his mother was 'mad.' Willis countered that she was not angry but 'disappointed.'

*Id.* at 179 (footnote and citations omitted). The son showed his bruises to the school

---

2. We do not wish to imply that a bright-line rule exists regarding the use of a closed fist.

nurse, who called child protective services, resulting in Willis being charged and convicted of class D felony battery.

To evaluate Willis's conviction, our Supreme Court adopted and applied the Restatement's general rule regarding parental discipline: "'A parent is privileged to apply such reasonable force or to impose such reasonable confinement upon his [or her] child as he [or she] reasonably believes to be necessary for its proper control, training, or education.'" *Id.* at 182 (quoting Restatement of the Law (Second) Torts § 147(1) (1965)) (alterations in original). The Restatement also includes a non-exhaustive list of factors to be considered in evaluating the reasonableness of a parent's conduct:

> "In determining whether force or confinement is reasonable for the control, training, or education of a child, the following factors are to be considered:
>
> (a) whether the actor is a parent;
>
> (b) the age, sex, and physical and mental condition of the child;
>
> (c) the nature of his offense and his apparent motive;
>
> (d) the influence of his example upon other children of the same family or group;
>
> (e) whether the force or confinement is reasonably necessary and appropriate to compel obedience to a proper command;
>
> (f) whether it is disproportionate to the offense, unnecessarily degrading, or likely to cause serious or permanent harm."

*Id.* (quoting Restatement, *supra,* § 150). Our Supreme Court cautioned that the relevant factors "should be balanced against each other, giving appropriate weight as the circumstances dictate, in determining whether the force is reasonable." 888 N.E.2d at 182.

In applying the factors to Willis's case, the court noted that the child was eleven years old, observing that "'[a] punishment which would not be too severe for a boy of twelve may be obviously excessive if imposed upon a child of four or five.'" *Id.* at 183 (quoting Restatement, *supra,* § 150 cmt. c). Next, the court considered the severity of the boy's offense, opining that "most parents would likely consider as serious their eleven-year-old child's behavior in being untruthful and taking property of others. At the very least a parent might consider that such behavior could set the stage for more aberrant behavior later in life." 888 N.E.2d at 183. Our Supreme Court also highlighted the Restatement's comment that

> "a more severe punishment may be imposed for a serious offense, or an intentional one, than for a minor offense, or one resulting from a mere error of judgment or careless inattention. The fact that the child has shown a tendency toward certain types of misconduct may justify a punishment which would be clearly excessive if imposed upon a first offender."

*Id.* (quoting Restatement, *supra,* § 150 cmt. c).

The *Willis* court next considered the force employed by the mother against her son, observing—as noted by the majority herein—that "Willis has used progressive forms of discipline." 888 N.E.2d at 183. In analyzing whether the boy's punishment was unnecessarily degrading, disproportionate to the offense, or likely to cause serious or permanent harm, the *Willis* court made the following observations: "J.J. received five to seven swats on his buttocks, arm, and thigh for what many parents might reasonably consider a serious offense. We find nothing particularly degrading about this manner of punishment. Nor, in context, is it readily

apparent that the punishment was disproportionate to the offense." *Id.* Finally, considering the severity of his injuries, the court noted that although bruising was evident the next day, "there is no indication that the school nurse provided any medical attention or even suggested that medical attention was necessary. In essence it appears from the record that the bruises were neither serious nor permanent." *Id.* at 184. After considering all of the above-described evidence, our Supreme Court concluded as a matter of law that Willis's actions were reasonable and fell within the parental discipline privilege, reversing her conviction.

I will endeavor to apply the *Willis* analysis to the facts herein. J.M., the child who was punished, was twelve years old—a full year older than the child in *Willis*. As for the severity of J.M.'s offense, she hit her seven-year-old brother in the face, giving him a bloody nose. When Matthew attempted to intervene, J.M. called her mother a "fucking bitch," tr. p. 29, acted as if she were going to hit her mother, ran inside the house, and shut herself in the bathroom. If anything, J.M.'s offenses are more severe than those at issue in *Willis*—striking a sibling in the face, shouting epithets at a parent, and threatening to hit a parent are certainly behaviors that most parents would consider very serious and "could set the stage for more aberrant behavior later in life." *Willis*, 888 N.E.2d at 183.

Considering the propriety of the force used by Matthew, the record reveals that the children had been fighting all day and that throughout the day, Matthew had warned J.M. to stop hitting her brother and sister. Thus, as in *Willis*, Matthew had employed progressive forms of discipline. As for the nature of the punishment inflicted by Matthew, I observe that J.M. received approximately ten blows from Matthew's hand and a belt. I see no reason to diverge from our Supreme Court's conclusion in *Willis* that, in response to a serious offense, there is "nothing particularly degrading about this manner of punishment. Nor, in context, is it readily apparent that the punishment was disproportionate to the offense." *Id.* And as in *Willis*, Matthew's discipline left bruises and welts, but "[i]n essence it appears from the record that the bruises [and welts] were neither serious nor permanent," militating "against a conclusion that the punishment was unreasonable." *Id.* at 184. Under these circumstances, I do not see how we can avoid the *Willis* court's conclusion that Matthew's actions herein fall within the parental discipline privilege.

In a dissenting opinion, Justice Sullivan observed that the *Willis* decision "increases the quantum of effort that the State will be required to expend in its efforts to protect children from abuse. As such, the Court's opinion constitutes a change in our State's policy toward child abuse." 888 N.E.2d at 184 (Sullivan, Justice, dissenting).[3] I wholeheartedly agree. I believe that the reasonableness of a parent's actions should be left for the trier of fact to evaluate. Here—and in *Willis*—the factfinder concluded that the respective moth-

---

**3.** As an aside, I observe that there are sixteen nations around the world that have taken the initiative to ban all corporal punishment: Sweden, Finland, Norway, Austria, Cyprus, Italy, Croatia, Latvia, Denmark, Romania, Bulgaria, Hungary, Germany, Ukraine, Iceland, and Israel. Christopher B. Fuselier, *Corporal Punishment of Children: California's Attempt and Inevitable Failure to Ban Spanking in the Home*, 28 J. Juv. L. 82, 86 (2007). The United Nations has recommended the adoption of this approach as well. *Id.* That the State of Indiana is headed so squarely in the opposite direction without a directive from the legislature to do so is troubling, to say the least.

ers' actions went beyond the boundary of reasonableness, and I am uncomfortable with an appellate court second-guessing that conclusion as a matter of law. That said, it is evident that our Supreme Court has instructed us to do precisely that, and given my analysis above, I believe that we are compelled by *Willis* to reverse Matthew's conviction and would therefore reverse the trial court herein.

