

FILED
May 13 2015, 10:48 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Barbara J. Simmons
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Karl M. Scharnberg
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Latoyia Smith,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

May 13, 2015

Court of Appeals Cause No.
49A05-1409-CR-400

Appeal from the Marion Superior
Court.

The Honorable Clayton Graham,
Judge.

The Honorable Steven Rubick,
Magistrate.

Cause No. 49G17-1307-CM-47880

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Respondent, Latoiya Smith (Smith), appeals her conviction for battery, a Class A misdemeanor, Ind. Code § 35-42-2-1 (a)(1)(A) (2012).

We affirm.

## ISSUE

Smith raises one issue on appeal, which we restate as: Whether there was sufficient evidence to support her misdemeanor battery conviction.

## FACTS AND PROCEDURAL HISTORY

Smith is the mother of a teenage daughter, J.W., born in May 1999. In the spring of 2013, J.W. was thirteen years old. Going through J.W.'s electronic devices, Smith discovered that J.W. was having conversations with boys on social media sites that were "very sexual in nature." (Transcript p. 128). Smith observed that in most conversations, J.W. was "the aggressor"; J.W. "was sexting[,] sending naked pictures of herself to guys, [and] talking to random people on the internet." (Tr. pp. 120, 128). In addition, J.W. was sneaking away from home and would arrange to meet with boys at nearby parks. In an attempt to correct J.W.'s behavior, Smith imposed a progression of discipline measures. Smith removed J.W. from public school and placed her in a private Christian school. Smith took all of J.W.'s clothes and left her with "sweats and polo shirts." (Tr. p. 128). Smith took away J.W.'s electronic devices, and also

had J.W. deactivate her social media accounts. Concerned for her daughter's safety, Smith had J.W.'s stepfather advise J.W. of the dangers of interacting with random boys on the internet.

[5] In the last week of April 2013, and despite grounding J.W., Smith allowed J.W. to go on a school field trip to Washington D.C. On that field trip, J.W. came into possession of an iPod through a friend. Unbeknownst to Smith, J.W. reactivated many of her social media accounts. Shortly after the trip, Smith went to J.W.'s bedroom in the middle of the night to check on her. The lights were off but J.W. was not asleep. Smith found J.W. using the iPod[1] that she had recently acquired. Smith was disappointed and she felt utter frustration with J.W.'s disobedience. At that point, Smith grabbed a belt from J.W.'s closet and she ordered J.W. to lie "across the bed on her stomach," but J.W. refused. (Tr. p. 134). Smith tried to hold her down, but J.W. dodged the spanking by swinging, rolling herself on the floor, kicking, and grabbing the belt. At some point, Smith reached out for a second belt to complete the spanking. J.W. "wasn't crying" and Smith stopped because "[i]t was taking

---

[1] The record does not reveal what kind of iPod J.W. had. However, we note that iPod touch as well as iPod nano have built-in apps such as iMessage, FaceTime, email, and web browser which are accessible over Wi-Fi. In addition, the devices allow users to download apps in the Apple store such as Facebook, and Instagram. https://support.apple.com/en-us/HT1353 (last visited Apr. 14, 2015).

more energy than it was worth." (Tr. p. 152). Altogether, Smith hit J.W. with the belt somewhere between "ten [] and twenty [] times" on her arms, shoulder, and legs. (Tr. p. 77). Type

[6] The following day, J.W. went to school. A teaching assistant saw J.W. sitting in a classroom between periods, and J.W. seemed emotionally upset. The teaching assistant pulled J.W. in the hallway for a private conversation, and J.W. revealed the contusions on her shoulder that resulted from Smith's beating. The teaching assistant reported the incident to the school's principal, who then contacted the Department of Child Services (DCS). Two days after the incident, May 3, 2013, J.W. went to the school nurse for an icepack to nurse her aching shoulder. Nurse Cynthia Litwiler (Nurse Litwiler) asked J.W. if she had reported the injury to her mother, and J.W. indicated that she had not. Thinking that the injury must not have been grave, Nurse Litwiler sent J.W. back to class without treatment. Later that afternoon, a DCS worker showed up at J.W.'s school to investigate the extent of J.W.'s injuries. The DCS worker and Nurse Litwiler took J.W. to the bathroom and they photographed J.W.'s injuries. J.W.'s injuries included: a swollen right shoulder which was painful to touch, welts and scratches to her right inner thigh, upper left thigh, upper part of her back, and forehead. Nurse Litwiler gave J.W. an icepack for her shoulder and ibuprofen for the pain.

[7] On July 24, 2013, the State filed an Information charging Smith with battery, a Class A misdemeanor. A bifurcated bench trial was conducted on March 20,

and July 31, 2014. At the close of Smith's bench trial, the court found Smith guilty of battery, and it held in part that

> . . . the evidence before the [c]ourt is that [] Smith lost control. Regardless of your daughter's wayward behavior, you were the adult [] Smith. Though you had taken progressive steps to discipline your child and though you announced to her that you were going to use corporal punishment as a result of her contumacious behavior[,] when she began resisting, you fought with her. You participated in the escalation of that. You described pushing back, resisting. You described pushing her, falling all over the bed; tussling. This became a fight with your child. Your [] decision to use reasonable proportional force to discipline your child was lost when you began to fight with the child. She was thirteen []. You were a grown woman. At that moment, it was incumbent on you to walk away and cool down.

(Tr. p. 161). The trial court then sentenced Smith to 365 days in Marion County jail, all suspended to non-reporting probation.

[8] Smith now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Sufficiency of the Evidence*

[9] Our standard of review for sufficiency claims is well settled. We neither reweigh the evidence nor judge the credibility of the witnesses. *Perrey v. State*, 824 N.E.2d 372, 373 (Ind. Ct. App. 2005), *trans. denied*. We only consider the evidence most favorable to the judgment and the reasonable inferences to be drawn therefrom. *Id*. Where there is substantial evidence of probative value to support the judgment, it will not be set aside. *Id*.

[10] To convict Smith of battery, the State was required to prove beyond a reasonable doubt that she knowingly or intentionally touched a person in a rude, insolent, or angry manner and that touching resulted in bodily injury. I.C. § 35-42-2-1(a)(1)(A)(2012). Not contesting the elements, Smith asserts the defense of parental discipline pursuant to Indiana Code section 35-41-3-1, which provides: "A person is justified in engaging in conduct otherwise prohibited if he has legal authority to do so." "This statute has been interpreted to provide legal authority for a parent to engage in reasonable discipline of her child, even if such conduct would otherwise constitute battery." *State v. Fettig*, 884 N.E.2d 341, 345 (Ind. Ct. App. 2008). Thus, "[a] parent is privileged to apply such reasonable force or to impose such reasonable confinement upon his [or her] child as he [or she] reasonably believes to be necessary for its proper control, training, or education." *Willis v. State*, 888 N.E.2d 177, 182 (Ind. 2008) (quoting Restatement of the Law (Second) Torts, § 147(1) (1965)).

[11] The defense of parental privilege, like self-defense, is a complete defense to battery of a child. *Id.* "[T]o sustain a conviction for battery where a claim of parental privilege has been asserted, the State must prove that either: (1) the force the parent used was unreasonable or (2) the parent's belief that such force was necessary to control her child and prevent misconduct was unreasonable." *Id.* "The State may refute a claim of the defense of parental privilege by direct rebuttal or by relying upon the sufficiency of the evidence in its case-in-chief." *Id.*

## II. *Parental Discipline Privilege*

[12] A parent has a fundamental liberty interest in maintaining a familial relationship with his or her child. *Id.* at 180. This fundamental interest includes the rights of parents to direct the upbringing and education of children, including the use of reasonable or moderate physical force to control behavior. *Id.* However, the potential for child abuse cannot be taken lightly. *Id.* Consequently, the State has a powerful interest in preventing and deterring the mistreatment of children. *Id.* The difficult task of prosecutors and the courts is to determine when parental use of physical force in disciplining children turns an otherwise law-abiding citizen into a criminal. *Id.*

[13] Here, Smith contends that the State's evidence was insufficient to refute the claim of parental privilege. Specifically, Smith argues that the force used was relatively inconsequential, the injury on J.W. was marginal, and her conduct was moderate and reasonable under the circumstances. In determining whether the force or confinement is reasonable, the following factors should be considered:

> (a) whether the actor is a parent;
> (b) the age, sex, and physical and mental condition of the child;
> (c) the nature of his offense and his apparent motive;
> (d) the influence of his example upon other children of the same family or group;
> (e) whether the force or confinement is reasonably necessary and appropriate to compel obedience to a proper command;
> (f) whether it is disproportionate to the offense, unnecessarily degrading, or likely to cause serious or permanent harm.

*Id*. at 182. (quoting Restatement of the Law (Second) Torts, § 150 (1965)). Our supreme court cautioned that the relevant factors "should be balanced against each other, giving appropriate weight as the circumstances dictate, in determining whether the force is reasonable." *Id*.

In advancing her claim, Smith relies on *Willis*, where our supreme court held that the parent's use of a belt to inflict corporal punishment was protected by the parental discipline privilege. *Id*. at 183. In *Willis*, the mother used progressive forms of discipline to punish her eleven-year-old son who frequently got into trouble. *Id*. According to the defendant in *Willis*, she had previously grounded the child after he had been caught stealing, but that punishment had not been effective. *Id*. Accordingly, she decided that a harsher punishment, namely, swatting him with a belt, would be more effective in response to a subsequent incident where the child had stolen several items of clothing. *Id*. At trial, the defendant explained, "I thought about it over the entire weekend and I even tried to talk to him again. And he continued to lie . . . . I didn't know what else to do." *Id*.

In applying the aforementioned factors to *Willis* case, the court concluded that the defendant had inflicted a reasonable punishment in light of the offense. *Id*. Specifically, the *Willis* court observed that the child was eleven-years-old and that the punishment was reasonable for a boy of that age. *Id*. In addition, the court noted that most parents would likely find that the pattern of being untruthful and taking away property of others would set the stage for more aberrant behavior later in life. *Id*.

[16]     In countering Smith's argument, the State claims that Smith's situation is not comparable to the *Willis* case. The State argues that the beating in "this case was much more severe than five to seven swats to which" Willis' son was subjected. (Appellee's Br. p. 7). The State argues that Smith hit J.W. between ten and twenty times using two belts and that the beating was unreasonable. In this regard, the State claims that Smith's situation is more comparable to *Mathews v. State*, 892 N.E.2d 695, 696 (Ind. Ct. App. 2008), *trans. denied*. In *Mathews*, the defendant was playing cards with her two daughters, twelve-year-old J.M. and seven-year-old B.M. *Id*. B.M. threw popcorn at her older sister, and J.M. responded by hitting B.M. in the face. *Id*. Mathews then tried to hit J.M., but missed. *Id*. J.M. then called Mathews a "fucking bitch" and ran to the bathroom. *Id*. Mathews followed J.M., forced entry, and hit J.M. with a closed fist on her arms and legs. *Id*. J.M. escaped to her bedroom, but Mathews pursued her, forcing entry, and beating J.M. with a belt about ten times. *Id*. At trial, Mathews stated that she attempted to take away the blanket that J.M. was using as a shield in order to get a better shot at J.M. *Id*.

[17]     Here, it is uncontroverted that J.W. was a badly behaved thirteen-year-old who had been caught having inappropriate conversations with boys on social media. Smith had tried non-physical disciplinary measures to correct J.W.'s wayward behavior, including grounding her and taking away her electronic devices. After J.W. returned from her school trip, Smith caught J.W. using an iPod, which J.W. had sneaked into the house, and J.W. had reactivated most of her social media accounts. J.W.'s persistent disobedience and the failed attempts to

correct her behavior preceding the use of the belt, certainly warranted some form of punishment.

[18] As we stated above, Indiana Code section 35-41-3-1 establishes that a parent has a right to employ reasonable corporal punishment to discipline a child. *See Dyson v. State*, 692 N.E.2d 1374, 1376 (Ind. Ct. App. 1998). But there are limits to that right and parents may be found guilty of, among other things, battery, if they exceed their disciplinary authority. *See, e.g., Mitchell v. State*, 813 N.E.2d 422, 427 (Ind. Ct. App. 2004) (holding that dropping four-year-old son to the floor and kicking him was a battery); *Smith v. State*, 489 N.E.2d 140, 141 (Ind. Ct. App. 1986) (holding that a parent's ten-minute beating of a child, involving fifteen blows to the child's body and resulting in a laceration and numerous contusions, was a criminal act).

[19] We decline Smith's invitation that we reweigh the evidence with regard to her claimed defense that her actions were justified as reasonable parental discipline. Despite J.W.'s egregious behavior and the apparent ineffectiveness of previous disciplinary attempts, the force employed by Smith to discipline J.W. was unreasonable and we find that it exceeded the privilege allowed to parents. At her bench trial, Smith stated that she was not angry, but rather, disappointed and frustrated with J.W.'s behavior. Contrary to Smith's assertion, the record reveals that she was angry and that she knowingly and intentionally touched J.W. in a rude, insolent and angry manner. *See* I.C. § 35-42-2-1(a)(1)(A)(2012).

[20] We note that parents do not always act with calmness of mind or considered judgment when upset with their child's delinquent behavior. Both mothers in *Willis* and in the case at bar were justly upset by their disobedient teenagers. The stark difference between the two is, that the mother in *Willis* inflicted only five to seven swats which we find were more controlled than those displayed here. At trial, the court noted that Smith pushed J.W. several times to advance her beating. In addition, the record reveals that when J.W. fought off the beating, Smith fought back. The trial court noted that what might have begun as reasonable chastisement, escalated to a fight between a mother and her thirteen-year-old daughter. As a result, J.W. sustained numerous bruises on various parts of her body, including her face, shoulder, arms, and legs.

[21] Furthermore, we note that although the beating took place in one room, and it was not a chase as that displayed in *Mathews*, we find that the punishment bears some resemblance. In *Mathews*, we concluded that when Mathews followed J.M. to her bedroom and continued to beat her, it crossed from reasonable to unreasonable. *Mathews*, 892 N.E.2d at 699. We also noted that Mathews attempt to remove the blanket that J.M used as a shield so as to have a direct access for hitting was also unreasonable. *Id*. Turning to the facts of this case, Smith grabbed the first belt and she hit J.W. several times with it. At some point, Smith grabbed a second belt to complete the beating. All the while, J.W. used her hands to shield herself. We find that Smith reaching out for a second belt to complete the beating was unreasonable. We also find Smith's actions unreasonable when she engaged in a fighting match with J.W. on the night in

question. Moreover, at her bench trial, Smith admitted that she only stopped the whipping because she was not getting a reaction from J.W. and that beating seemed to take more energy than it was worth.

[22] Lastly, Smith's assertion that J.W.'s injuries were not serious enough to require medical attention is an invitation to reweigh that evidence, which will not do. The jury heard evidence that Smith beat then-thirteen-year-old J.W. approximately ten to twenty times with a belt. Although J.W. could not recall for how long she was in pain, J.W. testified that she was sore after the beating, and she had visible red welts and abrasions for days after the incident. The State also introduced photographic evidence that corroborated J.W.'s testimony.

[23] In light of the above factors and our deference to the fact-finder in sufficiency cases, the trial court was entitled to conclude that Smith's behavior was excessive, unreasonable, and outside the bounds of appropriate parental discipline, and the mere fact that it was imposed by an out-of-control parent upon her disobedient thirteen-year-old does not shield Smith from criminal liability. *See Mitchell*, 813 N.E.2d at 427. Under the circumstances, we conclude that Smith committed a battery not protected by the parental privilege.

## CONCLUSION

[24] Based on the foregoing, we conclude that the State produced sufficient evidence to prove beyond a reasonable doubt that Smith committed battery.

Affirmed.

Bailey, J. and Barnes, J. concur