

**FILED**

Mar 25 2020, 7:21 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Suzy St. John
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Guadalupe Pava,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 25, 2020

Court of Appeals Case No.
19A-CR-716

Appeal from the Marion Superior
Court

The Honorable Amy J. Barbar,
Magistrate

Trial Court Cause No.
49G01-1807-F5-23560

**Darden, Senior Judge.**

# Statement of the Case

Guadalupe Pava appeals her conviction by jury of battery by a person at least eighteen years of age resulting in bodily injury to a person less than fourteen years of age, a Level 5 felony.[1] We affirm.

# Issues

Pava raises two issues, which we restate as:

> I. Whether the battery statute, Indiana Code section 35-42-2-1, is unconstitutionally vague as applied to Pava's case.

> II. Whether there is sufficient evidence to sustain Pava's conviction.

# Facts and Procedural History

During the period of time relevant to this case, Irma Martinez and her children lived with Pava and Pava's children, including nine-year-old P.P., in Indianapolis. On June 6, 2018, Martinez was in an upstairs room when she heard P.P. crying downstairs. She also heard him say he "wasn't going to do it again." Amended Tr. Vol. II, p. 77.

Martinez went downstairs and saw Pava and P.P. standing in the dining room. Pava was striking P.P. on the back with an electrical cord. P.P. held his hands

---

[1] Ind. Code § 35-42-2-1 (2016).

behind him, in an attempt to block the strikes. Martinez saw Pava strike P.P. four times before she was able to take the electrical cord from Pava and had P.P. stand behind her. P.P. later testified that Pava was angry at him and had hit him a total of ten times.

[5] Martinez told Pava she was surprised by Pava's behavior. Pava cried and told Martinez "she didn't know why she had reacted that way." *Id.* at 78. Next, Pava went to work. Martinez noticed some marks on P.P.'s neck but she did not thoroughly examine him at the time.

[6] The next day, June 7, 2018, Martinez went to P.P.'s school and spoke with a social worker. A school employee spoke with P.P., and P.P. showed that person marks on his body. The Indiana Department of Child Services ("DCS") were contacted.

[7] DCS Case Manager Christi Carvahal inspected Pava's home the next day. She tried to speak with P.P., who was "very scared, timid and would not–was very withdrawn." *Id.* at 95. He would not speak with Carvahal. P.P. was wearing a t-shirt and shorts, but she could see "linear marking" on areas not covered by clothing. *Id.* Carvahal asked P.P. to remove his shirt and saw "extensive bruising and linear marks all over his body." *Id.* at 96. She took photographs, which show red linear welts on P.P.'s back, arms, legs, and chest. The photographs were later introduced into evidence at trial.

[8] Pava was in the room with Carvahal and P.P. as Carvahal took the photographs. Pava admitted to striking P.P. with a cord.

[9] Carvahal removed P.P. from the house. That same day, P.P. was taken to a doctor. The doctor noted "[n]umerous, too many to count, red and bruise-like striped areas" on P.P.'s body, all "less than 24 hours old." Tr. Ex. Vol., State's Ex. 15, p. 33. The stripes were on P.P.'s back, right upper arm, chest, the left side of his face, his left ankle, and the right side of his neck. P.P. claimed he sustained the injuries from falling off his bike, but the doctor noted none of his injuries were "consistent with falling off a bike." *Id.*

[10] Sergeant Kevin Kinder of the Indianapolis Metropolitan Police Department investigated P.P.'s case. He interviewed Pava, who admitted to striking P.P.

[11] On July 20, 2018, the State charged Pava with battery by a person at least eighteen years of age resulting in bodily injury to a person less than fourteen years of age, a Level 5 felony; and domestic battery resulting in bodily injury to a person less than fourteen years of age, also a Level 5 felony. The case was tried to a jury. During trial, Pava did not deny striking P.P. with the cord. She instead claimed she had exercised her right to discipline P.P. for wrongdoing. The jury determined Pava was guilty as charged.

[12] The trial court vacated the guilty verdict for domestic battery, determining that it merged into the other battery offense. The trial court entered a judgment of conviction as to the offense of battery by a person at least eighteen years of age resulting in bodily injury to a person less than fourteen years of age. Next, the trial court imposed a sentence, and this appeal followed.

# Discussion and Decision

## I. Constitutional Claim - Vagueness

Pava argues that the battery statute, as applied to her case, is unconstitutionally vague and violates both her right to due process of law under the Fifth Amendment and her right to due course of law under article one, section twelve of the Indiana Constitution. She concedes that she "did not challenge the constitutionality of applying the battery statute to her case below . . . ." Appellant's Br. p. 9. The State argues that Pava has waived her constitutional claim.

In general, a constitutional claim is waived on appeal if not first presented to the trial court in a motion to dismiss. *See Reed v. State*, 720 N.E.2d 431, 433 (Ind. Ct. App. 1999) (vagueness claim waived on appeal due to failure to raise claim during trial court proceedings), *trans. denied*. However, as Pava correctly notes, a constitutional claim may be raised at any stage of a proceeding, including on appeal. *Morse v. State*, 593 N.E.2d 194, 197 (Ind. 1992). We recognize that Pava did not file a motion to dismiss raising her constitutional claim in the trial court, but nevertheless we choose to address the merits of her claim. *See Boyd v. State*, 889 N.E.2d 321, 323 (Ind. Ct. App. 2008) (addressing merits of vagueness claim despite being raised for first time on appeal), *trans. denied*.

A challenge to the validity of a statute must overcome a presumption that the statute is constitutional. *Brown v. State*, 868 N.E.2d 464, 467 (Ind. 2007). The

party challenging the constitutionality of a statute bears the burden of proving otherwise. *Morgan v. State*, 22 N.E.3d 570, 573 (Ind. 2014).

[16] Under federal constitutional principles of due process,[2] a statute is void for vagueness if its prohibitions are not clearly defined. *Bemis*, 652 N.E.2d at 92. A criminal statute may be invalidated for vagueness for either of two independent reasons: (1) for failing to provide notice enabling ordinary people to understand the conduct that it prohibits; and (2) for the possibility that it authorizes or encourages arbitrary or discriminatory enforcement. *Brown*, 868 N.E.2d at 467. "Accordingly, the statutory language must 'convey sufficiently definite warning as to the proscribed conduct when measured by common understanding.'" *Id.* (quoting *Rhinehardt v. State*, 477 N.E.2d 89, 93 (Ind. 1985)).

[17] The examination of a vagueness challenge is performed in light of the facts and circumstances of each individual case. *Brown*, 868 N.E.2d at 467. A defendant is not at liberty to devise hypothetical situations which might demonstrate vagueness. *Baumgartner v. State*, 891 N.E.2d 1131, 1136 (Ind. Ct. App. 2008).

---

[2] A line of cases by this Court holds that appellate analysis of a vagueness claim is the same under both the federal and state constitutions. *Bemis v. State*, 652 N.E.2d 89, 92 (Ind. Ct. App. 1995); *Johnson v. State*, 648 N.E.2d 666, 670 (Ind. Ct. App. 1995); *Jackson v. State*, 634 N.E.2d 532, 535 (Ind. Ct. App. 1994); *Helton v. State*, 624 N.E.2d 499, 505 (Ind. Ct. App. 1993), *trans. denied*. The Indiana Supreme Court has not addressed this issue. *See Tiplick v. State*, 43 N.E.3d 1259, 1262 n.2 (Ind. 2015) (deferring for another day the question of whether the Indiana Constitution provides a different analysis on vagueness claims). In any event, Pava has not presented a separate analysis under the Indiana Constitution's due course of law clause, so we will apply only a federal constitutional analysis to her vagueness claim.

[18] At the time Pava committed the offense of battery, the statute at issue, Indiana Code section 35-42-2-1, provided in relevant part:

> (c) Except as provided in subsections (d) through (k), a person who knowingly or intentionally:
>
> (1) touches another person in a rude, insolent, or angry manner; or
>
> (2) in a rude, insolent or angry manner places any bodily fluid or waste on another person;
>
> commits battery, a Class B misdemeanor.
>
> (g) The offense described in subsection (c)(1) or (c)(2) is a Level 5 felony if one (1) or more of the following apply:
>
> * * * * *
>
> (5) The offense results in bodily injury to one or more of the following:
>
> * * * * *
>
> (B) A person less than fourteen (14) years of age if the offense is committed by a person of at least eighteen (18) years of age.

[19] The State "has a powerful interest in preventing and deterring the mistreatment of children." *Willis v. State*, 888 N.E.2d 177, 180 (Ind. 2008). "[T]he potential for child abuse cannot be taken lightly." *Id.* At the same time, a parent has a fundamental liberty interest in maintaining a familial relationship with his or

her child, including the right "'to direct the upbringing and education of children.'" *Id.* (quoting *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534-35, 45 S. Ct. 571, 573, 69 L. Ed. 2d 1070 (1925)). The right to direct an upbringing includes "the use of reasonable or moderate physical force to control behavior." *Id.*

[20] The Indiana Supreme Court has recognized a common law parental privilege to use moderate or reasonable physical force to discipline children "without criminal liability." *Id.* Further, Indiana Code section 35-41-3-1 (1977) provides, "A person is justified in engaging in conduct otherwise prohibited if he has the legal authority to do so." Indiana's courts have construed this statute "as including reasonable parental discipline that would otherwise constitute battery." *Willis*, 888 N.E.2d at 181.[3] Thus, the reviewing court is left with the task of balancing the protection society affords to its most vulnerable individuals, its children, against the parental rights and privileges that society recognizes belong to parents in the rearing of their children.

[21] Pava argues that under the facts of her case, and in conjunction with the parental privilege to discipline one's child, "the decision of what is or isn't reasonable corporal punishment" under Indiana Code section 35-42-2-1 is too subjective, and she had no constitutionally acceptable guidance as to whether striking P.P. crossed the line into illegal battery. Appellant's Br. p. 12. After

---

[3] In the context of civil proceedings involving children in need of services, Indiana Code section 31-34-1-15 (1997) provides that a parent, guardian, or custodian has the right "to use reasonable corporal punishment when disciplining the child." However, Indiana has not codified a parental discipline privilege in the context of criminal charges. *Willis*, 888 N.E.2d at 181.

reviewing the totality of the facts, circumstances, and evidence, we disagree for two reasons.

[22] First, Indiana Code section 35-42-2-1 sets forth a scienter, or state of mind, requirement: the State must prove a defendant acted knowingly or intentionally. An intent to touch another person in a rude, insolent, or angry manner, or knowledge that one is touching another person in a rude, insolent, or angry manner, is a different state of mind than an intent to implement corrective discipline. The scienter requirement ensures that a person has fair notice as to what kind of conduct is punishable as battery. *See Shuger v. State*, 859 N.E.2d 1226, 1235 (Ind. Ct. App. 2007) (rejecting vagueness challenge to statute that outlawed interference with hunting; the statute's scienter requirement clarified what type of conduct would violate the statute), *trans. denied*.

[23] Second, the Indiana Supreme Court has implemented a reasonableness standard to assess the parental discipline privilege. In *Willis*, the Court adopted the Restatement of the Law (Second) on Torts, which provides, in relevant part, that a "'parent is privileged to apply such reasonable force or to impose such reasonable confinement upon his child as he reasonably believes to be necessary for its proper control, training, or education.'" *Willis*, 888 N.E.2d at 182 (quoting Restatement of the Law (Second) Torts, § 147(1) (1965)).

[24] The reasonable person standard, as adopted by the Indiana Supreme Court in *Willis*, is objective rather than subjective. As the Court noted in a different case, "a reasonable person standard provides enough notice of prohibited conduct and limitations upon discretionary enforcement to satisfy constitutional concerns." *Morgan*, 22 N.E.3d at 576.

[25] Following the holding in *Morgan*, we conclude the objective reasonableness standard adopted in *Willis* would provide sufficient notice of what conduct crosses the line from mere discipline of a child to battery. Pava has failed to carry her burden of demonstrating that the battery statute is unconstitutionally vague as applied to her specific act of repeatedly striking P.P. with an electrical cord. *See Helton*, 624 N.E.2d at 507 (statute outlawing criminal gang activity was not unconstitutionally vague; statute included scienter requirements establishing a required state of mind for a defendant to be held criminally liable); *Johnson*, 648 N.E.2d at 670 (stalking statute not unconstitutionally vague; statute included both a scienter requirement and a reasonableness requirement).

## II. Sufficiency of the Evidence

[26] As an alternative argument to her constitutional claim, Pava argues the State failed to present sufficient evidence to rebut her claim of parental discipline

privilege.[4]  We apply the same standard of review as for any sufficiency of the evidence claim.  *Willis*, 888 N.E.2d at 182-83.  We neither reweigh the evidence nor judge the credibility of the witnesses.  *Smith v. State*, 34 N.E.3d 252, 255 (Ind. Ct. App. 2015).  We consider only the evidence most favorable to the judgment and the reasonable inferences to be drawn therefrom.  *Id.*  Where there is substantial evidence of probative value to support the judgment, it will not be set aside.  *Id.*

[27]  The defense of parental privilege, like self-defense, is a complete defense. *Willis*, 888 N.E.2d at 182.  In order to negate a claim of parental privilege, the State must disprove at least one element of the defense beyond a reasonable doubt.  *Id.*  "Thus, to sustain a conviction for battery where a claim of parental privilege has been asserted, the State must prove that either:  (1) the force the parent used was unreasonable or (2) the parent's belief that such force was necessary to control her child and prevent misconduct was unreasonable."  *Id.* The State may refute a claim of the defense of parental privilege by direct rebuttal or by relying upon the sufficiency of the evidence in its case-in-chief. *Id.*

[28]  In *Willis*, the Indiana Supreme Court directed that courts should review certain non-exclusive factors when considering the reasonableness of a use of force:

---

[4] Pava does not dispute that the State presented sufficient evidence to establish the statutory elements of battery by a person at least eighteen years of age resulting in bodily injury to a person less than fourteen years of age.

(a) whether the actor is a parent;

(b) the age, sex, and physical and mental condition of the child;

(c) the nature of his offense and his apparent motive;

(d) the influence of his example upon other children of the same family or group;

(e) whether the force or confinement is reasonably necessary and appropriate to compel obedience to a proper command;

(f) whether it is disproportionate to the offense, unnecessarily degrading, or likely to cause serious or permanent harm.

*Id.* (quoting Restatement, § 150).

[29] In Pava's case, she is P.P.'s mother. P.P. was nine years old at the time of the incident, and he was smaller than Pava.

[30] At trial, Pava testified that P.P. had disobeyed her by pinching his two-year-old sister's leg. She stated she had previously admonished P.P. to stop harassing his sister, to no effect. Pava further testified that on the day in question, she had told P.P. to inform her when his sister's diaper needed to be changed, but P.P. had disobeyed her by removing his sister's diaper himself.

[31] In response to P.P.'s acts of disobedience, Pava used disproportionate and degrading force against him. She struck him at least ten times with an electrical cord, leaving a multitude of painful welts all over his body. P.P. was still in

pain the following day. Pava did not stop striking P.P. until Martinez intervened. In addition, she did not try lesser forms of punishment, such as grounding P.P. or taking away privileges, let alone less severe forms of corporal punishment.

[32] Pava indicated an awareness that her use of force was unreasonable. She cried after Martinez stopped her and stated she did not know why she struck P.P. Pava also claimed at trial that she struck P.P. only four times, but that statement was contradicted by P.P.'s testimony and by the photographs Carvahal took the day after the battery.

[33] In summary, the State submitted ample evidence to demonstrate beyond a reasonable doubt that Pava used an unreasonable amount of force, thus disproving her defense of parental privilege. *See Ceaser v. State*, 964 N.E.2d 911, 920 (Ind. Ct. App. 2012) (State presented sufficient evidence to disprove Ceaser's defense of parental privilege; parent beat child with a game controller cord for failing to perform chores and homework, resulting in welts on child's body), *trans. denied*.

# Conclusion

[34] For the reasons stated above, we affirm the judgment of the trial court.

[35] Affirmed.

Robb, J., and Vaidik, J., concur.