


FILED

May 01 2024, 9:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

Papa Ndiasse Ndiaye,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

May 1, 2024

Court of Appeals Case No.
23A-CR-1060

Appeal from the Hendricks Circuit Court

The Honorable Daniel Zielinski, Judge

Trial Court Cause No.
32C01-2204-F5-38

---

**Opinion by Judge May**
Judges Bailey and Felix concur.

**May, Judge.**

[1] Papa Ndiasse Ndiaye appeals following his convictions of Level 5 felony intimidation with a deadly weapon[1] and Level 5 felony battery resulting in bodily injury to a person less than fourteen years of age.[2] The intimidation charged was based on Ndiaye's threat to cut off the hand of his daughter, A.N., for stealing.

[2] During trial, Ndiaye requested the trial court instruct the jury about parental privilege to discipline a child for both charges. The trial court granted Ndiaye's request regarding the battery charge but denied his request for the intimidation charge. On appeal, Ndiaye argues the trial court abused its discretion when it denied his proposed jury instruction regarding parental privilege for intimidation with a deadly weapon.

[3] We hold the trial court did not abuse its discretion by denying Ndiaye's requested jury instruction because – assuming arguendo parental privilege is available as a defense to a charge of intimidation – as a matter of law, threatening to remove a child's hand while holding a knife could never be construed as reasonable parenting. Accordingly, we affirm the trial court's judgment.

---

[1] Ind. Code §§ 35-45-2-1(a) & 35-45-2-1(b)(2)(A).

[2] Ind. Code §§ 35-42-2-1(c)(1) & 35-42-2-1(g)(5)(B).

## Facts and Procedural History

[4] On April 7, 2022, eight-year-old A.N.'s second grade teacher sent A.N.'s parents - Ndiaye and Dieynba Ndiaye ("Dieynba") - an email indicating A.N. had taken candy from her and other students without their permission. The teacher described the wrapper of the candy that A.N. took. When Ndiaye read the email, he was "embarrass[ed] . . . [and] so ashamed." (Tr. Vol. II at 199.) When Ndiaye arrived home, he told A.N. about the note and searched the garbage, looking for the candy wrapper the teacher described. He found the wrapper in the trash can in his office and confronted A.N., who admitted she stole the candy. Ndiaye then slapped A.N.[3]

[5] Ndiaye told A.N. he was going to punish her and sent her to the bathtub because A.N. often urinated on herself when she was being punished. At Ndiaye's direction, A.N. removed her clothes except for her underwear and undershirt. Ndiaye then struck A.N. in the face "at least once or twice[.]" (*Id.* at 156.) Ndiaye struck A.N. on the arm and the thigh with a belt "[u]nder ten" times. (*Id.* at 157.) A.N. sustained marks on her arm, thigh, and face. Her eye was also "scrunched up a little bit" and she could not see normally. (*Id.* at 159.)

[6] A.N.'s older sister, Ai.N., came into the bathroom. Ai.N. noticed A.N. had urinated on herself and helped A.N. clean off in the shower. Ai.N. saw marks

---

[3] The record does not indicate where on her body Ndiaye slapped A.N. while in the office.

on A.N.'s "face and arm." (*Id.* at 139.) After A.N. took a shower, Ndiaye told her to sit in the corner in "time out[.]" (*Id.* at 161.)

[7]     When Dieynba came home from work later, A.N. was still in time out in the corner. Ndiaye told Dieynba what had happened. Ndiaye told Ai.N. to go to the kitchen and "get the knife." (*Id.* at 201.) Ai.N. returned with the knife, which was "[s]hielded, it was on the protective thingy that goes with the knife." (*Id.*) A.N. was approximately six to eight feet away from Ndiaye at the time. Ndiaye told A.N. that he was "going to cut [A.N.'s] hand off" (*id.* at 162), so she would "never, ever think about stealing again." (*Id.* at 202.) Dieynba said they could "wait until nighttime" to cut off A.N.'s hand and then they would "go drop her off in the forest." (*Id.* at 162.) A.N. was scared because she believed Ndiaye would cut her hand off and she would die because she "was going to bleed out and there wouldn't be any blood left in [her] body." (*Id.*)

[8]     The next day, Tyler Jean, the school resource officer at A.N.'s school, met with A.N. at the request of the school principal. Jean observed "bruising on [A.N.'s] left arm, kind of on the front and it kind of, bled over to the side. And then some bruising and a scratch around her left eye." (*Id.* at 109.) A.N.'s left arm was swollen. Jean took pictures of A.N.'s injuries. A.N. told Jean "she didn't feel completely safe going home[.]" (*Id.* at 111.) Jean then called the Department of Child Services ("DCS") and the Avon Police Department.

[9]     DCS Family Case Manager Mike Howell arrived to speak with A.N. After obtaining Ndiaye's permission to do so, Howell and Jean transported A.N. to

Susie's Place for a forensic interview. Before the interview Detective Jacob Boggess looked at Jean's pictures of A.N.'s injuries. During the interview, Detective Boggess observed "bruising to the side of [A.N.'s] face" when he spoke to her. (*Id*. at 171.) While A.N. told Detective Boggess what happened during the "incident with her father" the night before, she was "very tearful and upset." (*Id*.)

[10] After interviewing A.N., Detective Boggess spoke with Ndiaye, who admitted hitting A.N. with his hand and his belt after he found out A.N. had stolen candy from her teacher and other children. Ndiaye told Detective Boggess that he was holding a knife when he told A.N. that he would cut off her hand. He told Detective Boggess that he was not going to cut off A.N.'s hand and instead wanted to scare A.N. so she would stop stealing. Detective Boggess arrested Ndiaye. A.N. went home with Dieynba and Ai.N.

[11] On April 11, 2022, the State charged Ndiaye with Level 5 felony battery resulting in bodily injury to a person less than fourteen years of age and Level 5 felony intimidation with a deadly weapon. After the presentation of evidence, Ndiaye submitted a jury instruction regarding parental privilege that applied the defense to both the battery and intimidation charges. It stated:

> It is a defense to the charges of Battery and Intimidation that Papa Ndiaye was the parent of [A.N.] and Papa Ndiaye's alleged conduct was the use by Papa Ndiaye upon [A.N.] of reasonable force and/or threats of force which Papa Ndiaye reaosnably [sic] believed to be necessary for [A.N.'s] proper control, training, or education.

In determining whether Papa Ndiaye's conduct was such reasonable discipline, you may consider:

1) Whether the Papa Ndiaye was [A.N.'s] parent;

2) [A.N.'s] age, sex, and physical and mental condition;

3) The influence of [A.N.'s] example upon other children of the same family or group;

4) Whether the alleged force and/or threats of force were reasonably necessary and appropriate to compel obedience to a proper command to [A.N.];

5) Whether the alleged force and/or threats of force were:

      a. Disproportionate to [A.N.'s] behavior, and/or

      b. Unnecessarily degrading, and/or

      c. Likely to cause serious or permanent harm;

In considering these factors, you should balance them against each other, giving each the weight you find was appropriate under the circumstances in determining whether the alleged force and/or threats of force were reasonable discipline.

The State has the burden to prove beyond a reasonable doubt that

      a. The force and/or threats of force used were unreasonable, or

> b. Papa Ndiaye's belief that the force and/or threats of force used were necessary to control the child and to prevent misconduct was unreasonable.

> If you find that the State has not proven a. or b. above beyond a reaosnable [sic] doubt, you may not convict Papa Ndiaye of Battery or Intimidation, both Level 5 Felonies.

(App. Vol. II at 90.)  The trial court granted Ndiaye's request that the jury instruction regarding the defense of parental privilege be given during the instructions for the battery charge but denied his request to give it during the instructions for the intimidation charge.

[12]  The jury returned guilty verdicts on both charges, and the trial court entered convictions accordingly.  The trial court sentenced Ndiaye to three years for each count to run concurrent with one another for an aggregate sentence of three years with thirty days to be served incarcerated and the remainder of the aggregate sentence suspended.

## Discussion and Decision

[13]  Ndiaye argues the trial court abused its discretion when it denied his request for a jury instruction about the defense of parental privilege as it pertains to the charge of intimidation.  Our standard of review regarding the trial court's instructions to the jury is well-settled:

> The instruction of the jury lies within the trial court's sound discretion, and we review the trial court decisions with regard to jury instructions only for an abuse of that discretion.  To

constitute an abuse of discretion, an instruction that is given to the jury must be erroneous, and the instructions viewed as a whole must misstate the law or otherwise mislead the jury. In determining whether the trial court abused its discretion when it refused to give a tendered instruction we consider: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record supporting the instruction; and (3) whether the substance of the instruction is covered by other instructions. When a defendant seeks reversal based on instructional error, he must demonstrate a reasonable probability that substantial rights of the complaining party have been adversely affected.

*Harrison v. State*, 32 N.E.3d 240, 251 (Ind. Ct. App. 2015) (internal citations omitted), *trans. denied*.

[14] To prove Ndiaye committed Level 5 felony intimidation using a deadly weapon, the State had to prove he communicated a threat that placed another person in fear that the threat will be carried out while armed with a deadly weapon. Ind. Code §§ 35-45-2-1(a) & 35-45-2-1(b)(2)(A). As defined in the intimidation statute, a threat is "an expression, by words or action, of an intention to . . . unlawfully injure the person threatened[.]" Ind. Code § 35-45-2-1(c)(1). The facts most favorable to the judgment demonstrate Ndiaye committed this crime when he communicated an intention to cut off A.N.'s hand with the knife that he was holding, which placed A.N. in fear. Nevertheless, Ndiaye argues he should have been able to assert a parental privilege to intimidate his child.

[15] The defense of parental privilege is born out of Indiana Code section 35-41-3-1, which states, "[a] person is justified in engaging in conduct otherwise prohibited

if he has legal authority to do so." *Smith v. State*, 34 N.E.3d 252, 255 (Ind. Ct. App. 2015). Regarding this defense, our Indiana Supreme Court adopted language found in Restatement of the Law (Second) Torts, § 147(1) (1965): "A parent is privileged to apply such reasonable force or to impose such reasonable confinement upon his [or her] child as he [or she] reasonably believes to be necessary for its proper control, training, or education." *Willis v. State*, 888 N.E.2d 177, 182 (Ind. 2008). The Restatement further provides:

> In determining whether force or confinement is reasonable for the control, training, or education of a child, the following factors are to be considered:
>
> (a) whether the actor is a parent;
>
> (b) the age, sex, and physical and mental condition of the child;
>
> (c) the nature of his offense and his apparent motive;
>
> (d) the influence of his example upon other children of the same family or group;
>
> (e) whether the force or confinement is reasonably necessary and appropriate to compel obedience to a proper command;
>
> (f) whether it is disproportionate to the offense, unnecessarily degrading, or likely to cause serious or permanent harm.

*Id.* at § 150. "[T]o sustain a conviction for battery where a claim of parental privilege has been asserted, the State must prove that either: (1) the force the parent used was unreasonable or (2) the parent's belief that such force was necessary to control her child and prevent misconduct was unreasonable." *Willis*, 888 N.E.2d at 182.

[16] *Willis* involved parental privilege as a defense to a battery charge. Other Indiana caselaw regarding parental privilege also involved charges of battery. *See, e.g.*, *Vernon v. State*, 211 N.E.3d 1040, 1043-4 (Ind. Ct. App. 2023) (discussing parental privilege as a defense to Level 5 battery resulting in bodily injury to a person less than five years of age); *Smith*, 34 N.E.3d at 258 (discussing parental privilege as a defense to Class A misdemeanor battery); *Hunter v. State*, 950 N.E.2d 317, 322 (Ind. Ct. App. 2011) (discussing parental privilege as a defense to Class A misdemeanor battery). Ndiaye nevertheless asks us to "extend this [parental] privilege to the charge of intimidation." (Br. of Appellant at 7.) Our research has not uncovered a jurisdiction in the United States that has applied the defense of parental privilege to an intimidation charge. Accordingly, Ndiaye's request raises an issue of first impression. We choose not to address that issue, however, because even if we assume without deciding that parental privilege is available for a charge of intimidation, the privilege could not extend to Ndiaye's crime.

[17] The defense of parental privilege allows a parent's unlawful action against their child to be determined lawful based on the parent's right to reasonably discipline their child. *Vernon*, 211 N.E.3d at 1043. Here, Ndiaye, while armed

with a knife, told eight-year-old A.N. that he would cut her hand off because she had stolen candy at school. While, in theory, parents might reasonably attempt to coerce desired behavior from their children by threatening punishment for failure to cooperate with the parents' instructions, reasonable parenting cannot, as a matter of law, include threatening to commit serious bodily injury[4] to a child with a deadly weapon. Thus, the giving of an instruction allowing the jury to consider whether parental privilege excused Ndiaye's intimidation of A.N. would have been inappropriate under the facts of this case. Based thereon, we conclude the trial court did not abuse its discretion when it denied Ndiaye's request to instruct the jury on the defense of parental privilege as it pertained to the charge of Level 5 felony intimidation with a deadly weapon.[5] *See, e.g.*, *Henson v. State*, 786 N.E.2d 274, 277 (Ind. 2003) (trial court does not abuse its discretion when it denies a request to tender a jury instruction that is an incorrect statement of the law).

---

[4] Our legislature defined serious bodily injuries as those creating a substantial risk of death or causing: "(1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; (4) permanent or protracted loss or impairment of the function of a bodily member or an organ; or (5) loss of a fetus." Ind. Code § 35-31.5-2-292.

[5] Additionally, we note that, even if the trial court abused its discretion when it denied Ndiaye's request to instruct the jury regarding the defense of parental privilege for the intimidation charge, any error was harmless because there is not a reasonable probability the jury would have acquitted Ndiaye given the evidence in the record. *See, e.g. Dill v. State*, 741 N.E.2d 1230, 1233 (Ind. 2001) ("Errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise.").

# Conclusion

[18] The trial court did not abuse its discretion when it denied Ndiaye's request to include a jury instruction about the defense of parental privilege as applied to the intimidation charge against him because, as a matter of law, threatening a child with a deadly weapon is not reasonable parenting, and thus the proffered jury instruction is not supported by the facts of the case. Accordingly, we affirm the trial court's judgment.

[19] Affirmed.

Bailey, J., and Felix, J., concur.

ATTORNEY FOR APPELLANT

Lisa Diane Manning
Plainfield, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana

Robert M. Yoke
Deputy Attorney General
Indianapolis, Indiana