## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 17 2016, 7:25 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Larry F. Whitham
Whitham, Hebenstreit & Zubek, LLP
Indianapolis, Indiana

John W. Campbell
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Alvin C. Putman,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 17, 2016

Court of Appeals Case No.
25A03-1512-CR-2253

Appeal from the Fulton Superior Court.
The Honorable Wayne E. Steele, Judge.
Cause No. 25D01-1401-FC-39

**Shepard, Senior Judge**

[1] Alvin C. Putman accidentally recorded himself beating his grandchild. The trial court determined he was guilty of battery, a Class A misdemeanor. Ind. Code section 35-42-2-1 (2012). Putman challenges the evidence supporting his conviction. Finding the evidence sufficient, we affirm.

## Issue

Putman raises one issue: whether the State presented sufficient evidence to disprove his defense of parental privilege.

## Facts and Procedural History

On January 6, 2014, seventy-year-old Putman babysat his five-year-old grandson, K.P., at his office. K.P.'s biological father was not involved in K.P.'s life, and Putman acted as a father figure. Putman and his daughter, K.P.'s mother, were aware that K.P. had behavioral challenges, specifically, he was prone to violent "meltdowns." Tr. p. 29; State's Ex. 3A, p. 2. After the incident at issue here, K.P. was diagnosed with Asperger's Syndrome and Oppositional Defiant Disorder.

Early on the 6th, Putman called his bank on his mobile phone. Later that day, he inadvertently called the bank again, and the bank's telephone recording system activated. As Putman prepared to leave his office, he told K.P. to put on his coat, and K.P. refused. The bank's recording system captured a loud, four-minute beating. The next day, bank employees listened to the recording and called the police. An officer came to the bank, listened to the recording, and recognized Putman's voice.

The State charged Putman with neglect of a dependent, strangulation, and battery on a child resulting in bodily injury, a Class D felony. After a bench trial, the court determined Putman was guilty of battery and not guilty of the

remaining charges. At the sentencing hearing, the court treated the battery as a Class A misdemeanor and sentenced Putman accordingly.

## Discussion and Decision

[6] Putman argues the court erred in determining he was guilty of battery because the record reflects he was engaging in reasonable discipline of K.P. The State responds that it presented evidence disproving Putman's claim of parental privilege.

[7] Indiana Code section 35-41-3-1 (1977) provides, "A person is justified in engaging in conduct otherwise prohibited if he has legal authority to do so." Indiana's courts have interpreted that statute as applying to reasonable parental discipline that would otherwise constitute battery. *Willis v. State*, 888 N.E.2d 177 (Ind. 2008). As a result, a valid claim of parental privilege in disciplining a child is, like self-defense, a complete defense to an otherwise criminal act. *Id.* A parent is privileged to apply such reasonable force or confinement as the parent reasonably believes necessary for proper control, training, or education. *Id.*

[8] To negate a claim of parental privilege, the State must disprove the defense beyond a reasonable doubt. *Id.* It must prove that either (1) the force the parent used was unreasonable or (2) the parent's belief that such force was necessary to control his or her child was unreasonable. *Ceaser v. State*, 964 N.E.2d 911 (Ind. Ct. App. 2012), *trans. denied*. On appeal, we neither reweigh the evidence nor judge the credibility of the witnesses. *Smith v. State*, 34 N.E.3d 252 (Ind. Ct.

App. 2015). We affirm unless no reasonable fact-finder could have found the elements of the offense proven beyond a reasonable doubt. *Steele v. State*, 42 N.E.3d 138 (Ind. Ct. App. 2015).

[9] In determining whether the use of force for discipline was reasonable, courts may consider the following factors:

> (a) whether the actor is the parent;
>
> (b) the age, sex, and physical and mental condition of the child;
>
> (c) the nature of the child's offense and apparent motive;
>
> (d) the influence of the child's example upon other children of the same family or group;
>
> (e) whether the force or confinement is reasonably necessary and appropriate to compel obedience to a proper command;
>
> (f) whether it is disproportionate to the offense, unnecessarily degrading, or likely to cause serious or permanent harm.

*Willis*, 888 N.E.3d at 182.

[10] The recording of the incident is chastening. When K.P. refused to put on his coat, Putman became angry. One can hear the sounds of Putman striking K.P. several times and breathing heavily. The four-minute recording captured K.P repeatedly screaming "Ow! Ow! Ow!" and crying in fear. State's Ex. 1. At one point, K.P. coughed repeatedly, and Putman responded sarcastically, "Yeah, cough cough cough." *Id.* Next, K.P. screamed, "You're choking me!" and Putman said, "You think I care?" *Id.*

[11] Over the course of the recording, Putman yelled at K.P., threatening to put him "out in the f*****g snow." *Id.* He also said, "Your mama can't do nothing with you" and "I'm so tired of [K.P.]. Tired!" Putman expressed a wish that

K.P. would "go home and never, never come to town! Never!" *Id.* He shouted "God damn you!" and called K.P. "smart-assed," "smart-mouthed," and a "baby." *Id.* At the end of the recording, Putman yelled, "When grandpa says something, I mean now!" *Id.*

[12] Although Putman acted as K.P.'s parent, he used unreasonable and disproportionate force in response to K.P.'s mere refusal to put on a coat. K.P. was five years old and has several behavioral disorders that render him less able to respond appropriately to direction. Further, Putman's physical assault interfered with K.P.'s ability to breathe, and Putman callously professed not to care. To the contrary, Putman punctuated the beating with hateful insults. He later admitted to a police officer that he has anger issues. State's Ex. 3A. In addition, the beating was likely to cause serious harm. A doctor testified at trial that corporal punishment is inappropriate for a child with Asperger's Syndrome and could result in psychological harm.

[13] Appellant's counsel observes that Putman's use of force did not result in visible bodily injury. He urges that the published appeals of similar cases have ended in reversal or dismissal where there was none. We think this presses the published case law, but even if counsel were right, the State correctly points to Indiana Code section 35-31.5-2-29 (2012), which includes "physical pain" in the definition of bodily injury. A reasonable finder of fact could infer from K.P.'s screams and choking that Putman caused him to experience physical pain.

Finally, Putman argues he did not actually obstruct K.P.'s breathing, but that he instead merely spanked K.P. and that K.P. misstated what Putman was doing. This argument amounts to a request to reweigh the evidence. The State presented sufficient evidence to disprove Putman's defense of parental privilege. *See Matthew v. State*, 892 N.E.2d 695, 699 (Ind. Ct. App. 2008) (evidence sufficient where parent repeatedly struck child over a period of time, even though attack did not result in "permanent physical damage"), *trans. denied*.

## Conclusion

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

Najam, J., and Pyle, J., concur.