ATTORNEY FOR APPELLANT
Robert D. King, Jr.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Nicole M. Schuster
Deputy Attorney General
Indianapolis, Indiana

_____



FILED

Jun 10 2008, 2:54 pm

CLERK
of the supreme court,
court of appeals and
tax court

## In the
## Indiana Supreme Court

_____

No. 49S02-0707-CR-295

SOPHIA WILLIS,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

_____

Appeal from the Marion Superior Court, Criminal Division Room 16
No. 49G16-0602-FD-022935
The Honorable Danielle Gaughan, Commissioner

_____

On Petition To Transfer from the Indiana Court of Appeals, No. 49A02-0611-CR-982

_____

**June 10, 2008**

**Rucker, Justice.**


This case requires us to examine the balance that must be struck in determining when a parent's use of physical force as a form of discipline crosses the line into criminal conduct. We conclude the line was not crossed in this instance.

**Background and Procedural History**

Sophia Willis is a single mother raising her eleven-year-old son, J.J., who has a history of untruthfulness and taking property belonging to others. The events at issue in this case began at an elementary school Friday, February 3, 2006. On that date J.J.'s fifth grade teacher, Ms. McCuen, saw J.J. giving a bag of women's clothing to a classmate. Finding this to be an "odd exchange," Ms. McCuen contacted J.J.'s mother. Tr. at 31. Willis met with Ms. McCuen and identified the clothing as hers.

Experiencing ongoing disciplinary problems with J.J., Willis sent him to her sister's home over the next two days to ponder her options. When J.J. returned on Sunday Willis had a long conversation with her son and questioned him about his conduct. J.J. denied taking the clothing and instead concocted a story that shifted blame to other students. Willis warned that if he did not tell the truth he would be punished. J.J. again gave the same story. In response Willis instructed J.J. to remove his pants and place his hands on the upper bunk bed. J.J. complied, and Willis proceeded to strike him five to seven times with either a belt or an extension cord.[1] Although trying to swat J.J. on the buttocks, his attempt to avoid the swats resulted in some of them landing on his arm and thigh leaving bruises. J.J. testified that during this exchange his mother was "mad." Tr. at 9. Willis countered that she was not angry but "disappointed." Id. at 59-60.

The following Monday J.J. returned from gym class and asked to see the school nurse.[2] Showing the nurse the bruises, J.J. told her that he received a "whooping" from his mother "[b]ecause I had took some clothes and I had lied." Tr. at 8. The nurse contacted child protective services that in turn contacted the Indianapolis Police Department. Id. at 26.

---

[1] The evidence on this point is in conflict. Willis testified she used a belt and introduced it as Defendant's Exhibit C. Tr. at 57. J.J. testified that his mother used an extension cord. Id. at 8. For purposes of determining guilt and imposing sentence, the trial court declared, "I think it wouldn't matter if it was a belt or an extension cord." Id. at 65.

[2] According to J.J., Ms. McCuen noticed the marks on his arm as he was returning from gym. Only then did he ask to see the nurse. Ms. McCuen testified that her attention was drawn to J.J. upon his return from gym and she sent him to the nurse because "[h]e asked me if being hit with an extension cord was abuse." Tr. at 34.

Willis was arrested and charged with battery as a Class D felony.[3]  After a bench trial she was found guilty as charged.  At the sentencing hearing, the trial court acknowledged that Willis was a single mother attempting to raise a sometimes rebellious son.  Tr. at 65 (The trial judge emphasized there were "obviously some disciplinary issues with regard to [J.J.]"); Id. at 75-76 ("I know that you've been through a lot of things with your son. . . .  [T]here were issues [and] the teachers were concerned . . . .").  Noting the uncertainty of the law in this area, the trial court also observed, "[T]his is a tough area of the law. . . .  Because you know that a person's intent was not to do the wrong thing. . . .  I don't have a good answer for you [as to where to draw the line]. . . .  I do believe that as the case law is written that the incident that was before [the court] rose to the level of D Felony, Battery on a Child."  Tr. at 75-76.  Exercising its discretion to enter judgment of conviction as a Class A misdemeanor,[4] the trial court sentenced Willis to 365 days in jail with 357 days suspended to probation.

Contending that she had the legal authority to discipline her son, Willis appealed on grounds that the evidence was not sufficient to sustain the conviction.  Sympathizing with Willis' argument that she is a single parent doing the best she can and acknowledging that this is a "closer case" than other reported Indiana decisions, the Court of Appeals affirmed the judgment of the trial court.  See Willis v. State, 866 N.E.2d 374, 376 (Ind. Ct. App. 2007).  Having previously granted Willis' petition to transfer, we now reverse the judgment of the trial court.  Additional facts are set forth below as relevant.

**Discussion**

A parent has a fundamental liberty interest in maintaining a familial relationship with his or her child.  See Quilloin v. Walcott, 434 U.S. 246, 255 (1978); Wisconsin v. Yoder, 406 U.S.

---

[3] Sometimes referred to as "battery on a child," the statute provides that "[a] person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor," Ind. Code § 35-42-2-1(a), and the offense is a Class D felony "if it results in bodily injury to . . . a person less than fourteen (14) years of age and is committed by a person at least eighteen (18) years of age."  I.C. § 35-42-2-1(a)(2)(B).

[4] See I.C. § 35-50-2-7(b) ("Notwithstanding subsection (a) [setting forth the penalty for a Class D felony offense], if a person has committed a Class D felony, the court may enter judgment of conviction of a Class A misdemeanor and sentence accordingly.").

205, 231-32 (1972). This fundamental interest includes the right of parents "to direct the upbringing and education of children," Pierce v. Soc'y of Sisters, 268 U.S. 510, 534-35 (1925); see also Yoder, 406 U.S. at 213-14, including the use of reasonable or moderate physical force to control behavior. See I.C. § 31-34-1-15(1) (Entitled "Circumstances Under Which a Child Is a Child in Need of Services," the statute provides in part, "This chapter does not . . . [l]imit the right of a parent, guardian, or custodian of a child to use reasonable corporal punishment when disciplining the child."). However, the potential for child abuse cannot be taken lightly. Consequently, the State has a powerful interest in preventing and deterring the mistreatment of children. See Prince v. Dep't of Child Servs., 861 N.E.2d 1223, 1229 (Ind. Ct. App. 2007) ("[A] parent's right to her children is balanced against the State's limited authority to interfere for the protection of the children."); Parker v. Monroe County Dep't of Pub. Welfare, 533 N.E.2d 177, 179 (Ind. Ct. App. 1989) ("Fundamental rights to family integrity protect the relationship between parent and child from state action; however, in the event of parental neglect, abuse, or abandonment, the State has a compelling interest in protecting the welfare of the child."). The difficult task of prosecutors and the courts is to determine when parental use of physical force in disciplining children turns an otherwise law-abiding citizen into a criminal.

A parental privilege to use moderate or reasonable physical force, without criminal liability, was recognized at common law. For example, Blackstone observed, "[B]attery is, in some cases, justifiable or lawful; as where one who hath authority, a parent or master, gives moderate correction to his child, his scholar, or his apprentice." William Blackstone, 3 Blackstone's Commentaries on the Laws of England 120 (Oxford reprint 1992). A similar view has been expressed in this state's jurisprudence. See e.g., Hinkle v. State, 127 Ind. 490, 26 N.E. 777, 778 (1891) ("[F]ather has the right to administer proper and reasonable chastisement to his child without being guilty of an assault and battery, but he has no right to administer unreasonable chastisement, or to be guilty of cruel and inhuman treatment of his child . . . ."); Hornbeck v. State, 16 Ind. App. 484, 45 N.E. 620, 620 (1896) ("The law is well settled that a parent has the right to administer proper and reasonable chastisement to his child without being guilty of an assault and battery . . . .").

4

A number of jurisdictions have specifically codified a parental discipline privilege.[5] Although Indiana has not yet done so, our courts have construed Indiana Code section 35-41-3-1[6] – the defense of legal authority – as including reasonable parental discipline that would otherwise constitute battery. See Cooper v. State, 831 N.E.2d 1247, 1252 (Ind. Ct. App. 2005). Over several decades our courts have addressed parental claims of legal authority. See e.g., Johnson v. State, 804 N.E.2d 255, 257 (Ind. Ct. App. 2004); Dyson v. State, 692 N.E.2d 1374, 1376 (Ind. Ct. App. 1998); Townsend v. State, 616 N.E.2d 47, 50 (Ind. Ct. App. 1993), rev'd on other grounds, 632 N.E.2d 727, 730-31 (Ind. 1994); Smith v. State, 489 N.E.2d 140, 141-42 (Ind. Ct. App. 1986). Nonetheless, as the Court of Appeals has observed, there is still "precious little Indiana caselaw providing guidance as to what constitutes proper and reasonable parental discipline of children, and there are no bright-line rules." Mitchell v. State, 813 N.E.2d 422, 427 (Ind. Ct. App. 2004). We agree. And since adoption of the Criminal Code, this Court has not had the occasion to address the parental discipline privilege.

As a matter of judicial declaration or legislative enactment, several jurisdictions have embraced some, parts, or all of either the Model Penal Code or the Restatement (Second) of Torts to identify permissible parental conduct in the discipline of children. We think it helpful to take a look at these sources. The Model Penal Code provides in relevant part that a parent's use of force is justifiable if:

> (a) the force is used for the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of his misconduct; and

> (b) the force used is not designed to cause or known to create a substantial risk of causing death, serious bodily injury,

---

[5] Ala. Code § 13A-3-24(1) (2005); Alaska Stat. § 11.81.430(1)(a) (2006); Ariz. Rev. Stat. Ann. § 13-403(1) (2001); Ark. Code Ann. § 5-2-605(1) (Supp. 2007); Colo. Rev. Stat. Ann. § 18-1-703(1)(a) (2007); Conn. Gen. Stat. Ann. § 53a-18(1) (2007); Del. Code Ann. tit. 11, § 468(1) (2007); Guam Code. Ann. tit. 9, § 7.94 (2007); Haw. Rev. Stat. § 703-309(1) (1993); Mo. Ann. Stat. § 563.061(1) (1999); Mont. Code Ann. § 45-3-107 (2007); Neb. Rev. Stat. § 28-1413 (1995); N.Y. Penal Law § 35.10 (Supp. 2008); N.D. Cent. Code § 12.1-05-05(1) (Supp. 2007); Or. Rev. Stat. § 161.205(1) (2003); 18 Pa. Cons. Stat. Ann. § 509(1) (1998); S.D. Codified Laws § 22-18-5 (1998); Tex. Penal Code Ann. § 9.61(a) (2003).

[6] The statute provides, "A person is justified in engaging in conduct otherwise prohibited if he has legal authority to do so." I.C. § 35-41-3-1.

disfigurement, extreme pain or mental distress or gross degradation.

Model Penal Code § 3.08(1) (1985). We make two observations. First, the Code does not explicitly demand that the use of force be reasonable. Second, under the Code, so long as a parent acts for the purpose of safeguarding or promoting the child's welfare (including the specific purpose of preventing or punishing misconduct), the parent is privileged in using force, unless the force creates a substantial risk of death or excessive injuries. Neither of these two propositions finds support in Indiana's common law. We conclude therefore that the Model Penal Code is not a helpful source to inform our decision on the law in this area.

In contrast, the Restatement provides, "A parent is privileged to apply such reasonable force or to impose such reasonable confinement upon his [or her] child as he [or she] reasonably believes to be necessary for its proper control, training, or education." Restatement of the Law (Second) Torts, § 147(1) (1965). We adopt the Restatement view. Not only is it entirely consistent with the law in this jurisdiction, but also it provides guidance on the factors that may be considered in determining the reasonableness of punishment. It reads:

> In determining whether force or confinement is reasonable for the control, training, or education of a child, the following factors are to be considered:
>
> (a)   whether the actor is a parent;
>
> (b)   the age, sex, and physical and mental condition of the child;
>
> (c)   the nature of his offense and his apparent motive;
>
> (d)   the influence of his example upon other children of the same family or group;
>
> (e)   whether the force or confinement is reasonably necessary and appropriate to compel obedience to a proper command;
>
> (f)   whether it is disproportionate to the offense, unnecessarily degrading, or likely to cause serious or permanent harm.

6

Restatement, supra, § 150. We hasten to add that this list is not exhaustive. There may be other factors unique to a particular case that should be taken into consideration. And obviously, not all of the listed factors may be relevant or applicable in every case. But in either event they should be balanced against each other, giving appropriate weight as the circumstances dictate, in determining whether the force is reasonable.

The defense of parental privilege, like self-defense, is a complete defense. That is to say a valid claim of parental privilege is a legal justification for an otherwise criminal act. I.C. § 35-41-3-1. In order to negate a claim of parental privilege, the State must disprove at least one element of the defense beyond a reasonable doubt. See Wallace v. State, 725 N.E.2d 837, 840 (Ind. 2000) (discussing the State's burden in the context of an analogous self-defense claim); Tunstill v. State, 568 N.E.2d 539, 541 (Ind. 1991) ("Where the issue of self-defense is asserted by a defendant and finds support in the evidence, the State then has the burden of negating the presence of one or more of the necessary elements of the defense . . . ."). Thus, to sustain a conviction for battery where a claim of parental privilege has been asserted, the State must prove that either: (1) the force the parent used was unreasonable or (2) the parent's belief that such force was necessary to control her child and prevent misconduct was unreasonable. See Restatement, supra, § 147. The State may refute a claim of the defense of parental privilege by direct rebuttal or by relying upon the sufficiency of the evidence in its case-in-chief. Brown v. State, 738 N.E.2d 271, 273 (Ind. 2000). The decision of whether a claim of parental privilege has been disproved is entrusted to the fact-finder. The standard of review for a challenge to the sufficiency of the evidence to rebut a claim of parental privilege is the same as the standard for any sufficiency claim. See Sanders v. State, 704 N.E.2d 119, 123 (Ind. 1999). We neither reweigh the evidence nor judge the credibility of witnesses. Id. If there is sufficient evidence of probative value to support the conclusion of the trier of fact, the verdict will not be disturbed. Id.

Several of the factors suggested by the Restatement are helpful in evaluating the facts in this case. Although we know that J.J. is an eleven-year-old male child, there is nothing in the record concerning his physical or mental condition. In any event, "A punishment which would not be too severe for a boy of twelve may be obviously excessive if imposed upon a child of four or five." Restatement, supra, § 150 cmt. c. As for the nature of the offense and J.J.'s apparent

7

motive, the record is not clear as to why J.J. took his mother's clothing to school and then lied about it. That aside, most parents would likely consider as serious their eleven-year-old child's behavior in being untruthful and taking property of others. At the very least a parent might consider that such behavior could set the stage for more aberrant behavior later in life. Willis expressed her concerns in this regard, "[H]e's going to do it again . . . . [H]e's already done it again . . . . And I hate to say it, but I know my son will end up back in the court system." Tr. at 75. Comments to the Restatement provide, "[A] more severe punishment may be imposed for a serious offense, or an intentional one, than for a minor offense, or one resulting from a mere error of judgment or careless inattention. The fact that the child has shown a tendency toward certain types of misconduct may justify a punishment which would be clearly excessive if imposed upon a first offender." Restatement, supra, § 150 cmt. c. Clearly J.J. was not a first offender.

Concerning whether the force Willis employed against J.J. was reasonably necessary and appropriate to compel obedience to her insistence that he tell the truth, again the Restatement is instructive. "As in all cases in which the question arises as to whether there has been excessive means of carrying out the privilege [to use force], the actor is not privileged to use a means to compel obedience if a less severe method appears to be likely to be equally effective." Restatement, supra, § 150 cmt. d. The record shows that Willis has used progressive forms of discipline. Typical punishment was to send J.J. to his room, ground him, or withhold privileges such as television, games, and time spent outdoors. Tr. at 16-18, 43. According to Willis, after grounding failed the last time J.J. was caught stealing, she decided harsher punishment – swatting with a belt – would be more effective. As Willis explained, "I thought about it over the entire weekend and I even tried to talk to him again. And he continued to lie. . . . I didn't know what else to do." Tr. at 75.

Considering whether the punishment J.J. received was unnecessarily degrading, dispropotionate to the offense J.J. committed, or likely to cause J.J. serious or permanent harm, we make the following observations. J.J. received five to seven swats on his buttocks, arm, and thigh for what many parents might reasonably consider a serious offense. We find nothing particularly degrading about this manner of punishment. Nor, in context, is it readily apparent

8

that the punishment was disproportionate to the offense. The question is whether the manner of punishment was "likely to cause [J.J.] serious or permanent harm." Restatement, supra, § 150(f). The best answer to this question is J.J.'s own testimony which indicated that the swats hurt "[f]or a minute" but did not hurt the next day when he returned to school. Tr. at 10. To be sure the bruising was still apparent, but there is no indication that the school nurse provided any medical attention or even suggested that medical attention was necessary. In essence it appears from the record that the bruises were neither serious nor permanent. This fact militates against a conclusion that the punishment was unreasonable. See State v. Wilder, 748 A.2d 444, 455 (Me. 2000) (concluding that to trigger criminal liability the physical harm caused by the parent's use of force as a method of discipline must result in more than transient pain and minor, temporary marks or bruises); T.G. v. Dep't of Children & Families, 927 So.2d 104, 106 (Fla. Dist. Ct. App. 2006) (Bruises are not necessarily indicative of excessive corporal punishment.).

In response to a charge of battery, Willis raised the defense of parental discipline privilege. Considering the totality of the circumstances, we are not persuaded that the State disproved the defense beyond a reasonable doubt. We therefore set aside Willis' conviction.

**Conclusion**

We reverse the judgment of the trial court.

Shepard, C.J. and Dickson and Boehm, JJ., concur.
Sullivan, J., dissents with separate opinion.

9

**Sullivan, Justice, dissenting.**

I respectfully dissent.

We see on appeal many cases of child abuse in which the parents claim that they were only disciplining their children, that they reasonably believed that the force they used was necessary to control their children or prevent misconduct. By authorizing parents to impose as much force they believe is necessary unless the State proves beyond a reasonable doubt that either (1) the force used was unreasonable; or (2) the parents' belief was unreasonable, the Court increases the quantum of effort that the State will be required to expend in its efforts to protect children from abuse. As such, the Court's opinion constitutes a change in our State's policy toward child abuse. Particularly given the commitment of time and resources that the legislative and executive branches have devoted to this subject for the last two decades and more, I believe that such a policy change should be made by the legislative and executive branches, not the judiciary.