Jeffrey HUNTER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–1011–CR–1224.

Court of Appeals of Indiana.

May 31, 2011.

Ruth Johnson, Marion County Public Defender, Agency—Appellate Division, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Gary R. Rom, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Appellant–Defendant Jeffrey Hunter appeals his conviction for Class A misdemeanor Battery.[1] Specifically, Hunter contends that the evidence is insufficient to rebut his proffered defense that the alleged battery qualified as privileged parental discipline. We affirm.

## FACTS AND PROCEDURAL HISTORY

In May of 2010, fourteen-year-old B.H. lived with her father, Hunter, her stepmother, and her eight-year- and nine-month-old half-brothers. Beginning in approximately late 2008 or early 2009, B.H. began exhibiting continuously worsening behavioral problems, including lying, sneaking out of her father's home, and displaying a severely bad attitude. B.H. also began having trouble at school, where her grades dropped from mostly As and Bs to mostly Ds and Fs, she was "kicked out" of before- and after-school programs designed to help B.H. with her class work, and she was "kicked off" of the cross-country team. Tr. p. 30–31. In attempts to curtail B.H.'s behavioral problems, Hunter tried progressive forms of discipline, including grounding B.H. and taking away her television and telephone privileges.

At some point near the end of the 2009–2010 school year, B.H. asked Hunter for permission to go on a school trip to Indiana Beach on May 20, 2010. Hunter refused to grant B.H. permission to go on the school trip because B.H.'s grades were low. Despite Hunter's refusal, B.H. decided that she wanted to go on the school trip, so she asked a friend to forge Hunter's name on a required permission slip and went on the school trip without telling Hunter. Hunter did not learn that B.H. had gone on the school trip until he came to pick her up from school on May 20, 2010. Hunter spoke with school administrators to find out how B.H. had managed to go on the trip without a signed permis-

1. Ind.Code § 35–42–2–1 (2009).

sion slip. After speaking with the school administrators, Hunter took B.H. home.

The next day, Hunter went to school with B.H. and met with the school principal. Hunter and the principal spoke with B.H. for approximately one hour before discovering how B.H. had managed to go on the school trip. However, neither Hunter nor the principal discovered who had signed B.H.'s permission slip or who had paid for B.H. to go to Indiana Beach. Later that day, Hunter picked B.H. up from school and again asked B.H. to tell him who had paid for her trip to Indiana Beach. B.H. responded by giving Hunter "attitude[,]" "rolling her eyes[,]" and refusing to tell Hunter who had paid for her trip. Tr. p. 20.

Upon arriving home, Hunter instructed B.H. to remove her clothing down to her undergarments and come into the living room. Hunter again asked B.H. who had paid for her trip to Indiana Beach, but B.H. refused to answer. Hunter hit B.H. with a belt approximately twenty times, hitting her back, arms, and legs. Eventually, B.H. ran out of the house to a friend's home nearby. The friend's mother called the police after seeing the bruises on B.H.'s back. B.H.'s step-mother and half-brothers were home at the time Hunter repeatedly hit B.H. with the belt.

On June 23, 2010, the State charged Hunter with Class A misdemeanor battery. A bench trial was held on September 30, 2010, at the conclusion of which the trial court took the matter under advisement. On October 4, 2010, the trial court found Hunter guilty of Class A misdemeanor battery. On October 21, 2010, the trial court sentenced Hunter to 180 days with 170 days suspended to probation. This appeal follows.

## DISCUSSION AND DECISION

██ A parent has a fundamental liberty interest in maintaining a familial relationship with his or her child. *Willis v. State*, 888 N.E.2d 177, 180 (Ind.2008). This fundamental interest includes the rights of parents to direct the upbringing and education of children, including the use of reasonable or moderate physical force to control behavior. *Id.* (quotation omitted). However, the potential for child abuse cannot be taken lightly. *Id.* Consequently, the State has a powerful interest in preventing and deterring the mistreatment of children. *Id.* The difficult task of prosecutors and the courts is to determine when parental use of physical force in disciplining children turns an otherwise law-abiding citizen into a criminal. *Id.*

██ Hunter contends that the State did not present sufficient evidence to rebut his proffered defense that the alleged battery qualified as privileged parental discipline.

The defense of parental privilege, like self-defense, is a complete defense. That is to say a valid claim of parental privilege is a legal justification for an otherwise criminal act. I.C. § 35–41–3–1. In order to negate a claim of parental privilege, the State must disprove at least one element of the defense beyond a reasonable doubt. *See Wallace v. State*, 725 N.E.2d 837, 840 (Ind.2000) (discussing the State's burden in the context of an analogous self-defense claim); *Tunstill v. State*, 568 N.E.2d 539, 541 (Ind.1991) ("Where the issue of self-defense is asserted by a defendant and finds support in the evidence, the State then has the burden of negating the presence of one or more of the necessary elements of the defense...."). Thus, to sustain a conviction for battery where a claim of parental privilege has been asserted, the State must prove that either: (1) the force the parent used was unreasonable or (2) the parent's belief

that such force was necessary to control her child and prevent misconduct was unreasonable. *See* Restatement, *supra,* § 147. The State may refute a claim of the defense of parental privilege by direct rebuttal or by relying upon the sufficiency of the evidence in its case-in-chief. *Brown v. State,* 738 N.E.2d 271, 273 (Ind.2000). The decision of whether a claim of parental privilege has been disproved is entrusted to the fact-finder. The standard of review for a challenge to the sufficiency of the evidence to rebut a claim of parental privilege is the same as the standard for any sufficiency claim. *See Sanders v. State,* 704 N.E.2d 119, 123 (Ind.1999). We neither reweigh the evidence nor judge the credibility of witnesses. *Id.* If there is sufficient evidence of probative value to support the conclusion of the trier of fact, the verdict will not be disturbed. *Id.*

*Id.* at 182–83.

Our courts are guided by the factors set out in the Restatement of the Law (Second) of Torts, § 147(1) (1965), which provides, "[a] parent is privileged to apply such reasonable force or to impose such reasonable confinement upon his child as he reasonably believes to be necessary for its proper control, training, or education." *Id.* at 182. The Indiana Supreme Court has set forth certain factors that can be considered in determining whether a parent's use of force was reasonable, including:

(a) whether the actor is a parent; (b) the age, sex, and physical and mental condition of the child; (c) the nature of his offense and his apparent motive; (d) the influence of his example upon other children of the same family or group; (e) whether the force or confinement is reasonably necessary and appropriate to compel obedience to a proper command; (f) whether it is disproportionate to the offense, unnecessarily degrading, or likely to cause serious or permanent harm.

*Id.* This list is not an exhaustive list, and there may be other factors that are unique to a particular case that should be taken into consideration. *Id.*

Hunter likens his discipline of B.H. to that which our Supreme Court found to be permissible in *Willis,* but we conclude that the facts and circumstances of the instant matter are distinguishable. In *Willis,* the mother used progressive forms of discipline to punish her eleven-year-old son, who frequently got into trouble. 888 N.E.2d at 183. According to the defendant in *Willis,* she had previously grounded the child after he had been caught stealing, but that punishment had not been effective. Accordingly, she decided that a harsher punishment, namely, swatting him with a belt, would be more effective in response to a subsequent incident where the child had stolen several items of clothing. *Id.* As the defendant explained, " 'I thought about it over the entire weekend and I even tried to talk to him again. And he continued to lie. . . . I didn't know what else to do.' " *Id.* The Indiana Supreme Court noted that the defendant inflicted five to seven swats on her child's buttocks, arm, and thigh for what many parents might reasonably consider a serious offense, but did not inflict any long-lasting physical injury. *Id.*

■ Here, Hunter contends that the State failed to present sufficient evidence to refute his claim of parental privilege because the force he used to discipline B.H. was reasonable. The State concedes that Hunter is B.H.'s father, that B.H. is of an age when severe punishment is acceptable, and that "B.H.'s constant disobedience and the failed attempts to correct her behavior preceding the forged permission slip certainly warranted severe pun-

ishment," but argues that despite B.H.'s egregious behavior and the apparent ineffectiveness of previous disciplinary attempts, Hunter's actions were not reasonable. Appellant's App. p. 5. We agree.

The evidence establishes that Hunter instructed fourteen-year-old B.H. to remove her clothing down to her undergarments and come downstairs to the family's living room. Hunter acknowledged that it was not normal for him and B.H. to have a conversation while she was wearing only her undergarments. B.H.'s step-mother and two half-brothers were home at the time, which could undoubtedly make B.H.'s near-naked conversation with and punishment by Hunter in the family's living room unnecessarily embarrassing and degrading. Moreover, nothing in the record suggests that Hunter used his discipline of B.H. as an example to influence B.H.'s eight-year and nine-month-old half-brothers' behavior. Additionally, Hunter hit B.H. with a belt approximately twenty times with enough force that a scab on her left thigh still hurt to the touch and one of her middle fingers was still swollen approximately three and one-half months later. Despite Hunter's argument to the contrary, the arguably degrading and long-lasting physical effects of B.H.'s injuries differentiate the instant matter from *Willis,* and lead us to conclude that the force employed by Hunter was unreasonable. Because Hunter used unreasonable force in punishing B.H., we further conclude that the evidence presented by the State was sufficient to rebut the alleged parental discipline privilege.

The judgment of the trial court is affirmed.

BAKER and MAY, JJ., concur.