## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 23 2016, 8:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bruce W. Graham
Graham Law Firm P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Paula J. Beller
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Wilma Beatrice Allen,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | November 23, 2016<br><br>Court of Appeals Case No.<br>79A05-1601-CR-26<br><br>Appeal from the Tippecanoe<br>Circuit Court<br><br>The Honorable Thomas H. Busch,<br>Judge<br><br>Trial Court Cause No.<br>79C01-1507-F6-2 |

**Brown, Judge.**

[1] Wilma Beatrice Allen appeals her conviction for battery as a level 6 felony. Allen raises one issue which we revise and restate as whether the evidence is sufficient to sustain her conviction. We affirm.

*Facts and Procedural History*

[2] On July 6, 2015, Allen was at the apartment of her daughter Crystal in West Lafayette watching Crystal's children, including five year old C.W. and ten year old B.B. Allen had been drinking beer that day. The children were playing hide and go seek, and C.W. had a pop bottle in his hand with water in it. C.W. did not know that B.B. was behind the couch, and B.B. "scared him and he threw the pop can up and it hit" Allen. *Id.* at 12. Allen retrieved a belt from Crystal's bedroom and, in front of B.B., struck C.W. on the arm, injuring the skin on his arm. C.W. "was screaming," "kept wanting [B.B.] to hold him," and "wouldn't let go of" B.B. *Id.* at 13. A few minutes later, Crystal "came in and she started hollering" at Allen. *Id.* at 12. Crystal and Allen had a physical altercation, and Allen called the police. Before police arrived, Allen left the apartment.

[3] Deputy Jon Eads of the Tippecanoe County Sheriff's Department arrived at Crystal's apartment and observed Chrystal standing outside of a van and children, including C.W., inside the van. Crystal identified C.W. as the person who was injured, and Deputy Eads observed that "skin was missing or had been removed from [C.W.'s] arm" and that there was "some bruising" and "minor welting." *Id.* at 28. Deputy Eads noticed the injury "looked like a fresh injury." *Id.*

[4]    Deputy Dustin Treida arrived at the scene, obtained a description of Allen, and left to attempt to locate her. He located her walking on the side of a road speaking on her cell phone, and she was distraught and visibly upset. He noticed that Allen had blood on her hand and a laceration to her finger, and she told him that she "was jumped by her daughter Crystal" and that she received the injury to her hand when Crystal bit her. *Id.* at 37. Deputy Treida smelled the odor of alcohol and convinced Allen to cross the street to where medics with an ambulance were located to have her finger examined, and she was eventually transported to the hospital. Allen told Deputy Treida that she "had drank earlier in the evening." *Id.* at 38.

[5]    About one to one and one-half hours after he spoke with Crystal, Deputy Eads spoke with Allen at the hospital. Allen "was very belligerent," Deputy Eads could smell an odor of alcohol coming from her breath, and Allen "just kept very adamantly saying that the child had no injuries." *Id.* at 31. Deputy Eads transported Allen to the jail, and during the trip Allen stated "that they were kids that were out of control and needed to be disciplined." *Id.*

[6]    On July 13, 2015, the State charged Allen with battery of C.W. as a level 6 felony and with being an habitual offender. At Allen's bench trial, the State presented the testimony of B.B., C.W., Deputy Eads, and Deputy Treida, and Allen testified on her own behalf and presented testimony from Crystal. During B.B.'s testimony, the deputy prosecutor asked what C.W.'s arm looked like after he was hit, and B.B. testified "[i]t looked like his meat was gone" and "[l]ike his skin." *Id.* at 12-13. When asked "did baby C.W.'s arm look like that

before he got hit," B.B. answered "[n]o," and when asked how she knew Allen had been drinking beer, B.B. testified "[b]ecause all of the pop cans were on the side of the couch." *Id.* at 13-14. When asked on cross-examination if the marks on C.W. were there before Allen struck him, B.B. answered "[n]o." *Id.* at 15. On cross-examination, C.W. was asked whether they got "pennies hot and [threw] them at people," and C.W. answered "I didn't throw it," and when asked "[h]ow did [M.] burn her grandmother," C.W. stated "[s]he put it on stove" and "she put . . . the penny on the stove and then she . . . throw it at her and I said don't do it and she did it." *Id.* at 21. During Deputy Eads's testimony, he indicated that C.W. was not taken to the hospital, that he was examined by medics at the scene, and that Crystal declined to have him transported to the hospital.

[7] Allen testified that the injury to C.W.'s arm occurred prior to the day of July 6th and that "the mark had been on C.W.['s] arm for like – since June 30." *Id.* at 44. She stated that she did not place the mark on him with a belt or other instrument, that the mark had been caused by C.W. being burned with a hot penny, that she was burned by a hot penny on June 30th, and that she first noticed the mark on C.W.'s arm on July 3rd. She testified that she was born on July 3, 1964, and that the BMV mistakenly stated her birthday as July 3, 1963. She testified that she had not been drinking alcohol and did not yell at the hospital. The court stated "tell me what a chastisement is," and Allen stated "a spanking," and the court asked "[w]hen did that occur," and Allen testified "[t]his occurred July the 3rd." *Id.* at 62. The court asked "[a]nd what did you

use to spank them," and Allen answered "[i]t was a—do any one of you ladies got a belt on it was a little thin belt. That Crystal had to chastise them with." *Id.*

[8] Allen further testified that, on July 3rd, C.W. kept doing flips off of the stairs and two of the other children were arguing and hitting each other and she said "where is my belt." *Id.* at 65. She stated "I said C.W. come on and as C.W. was begging back I sent (inaudible) C.W., I pulled his little leg and I gave him a little tap and he – I think C.W. was actually wanted something to complain about like you know what I'm saying this hurt," "so this is when he discovered the scar and this was when me and Crystal discovered that the scar was on him," and "[w]e didn't know that the scar was on him until July the 3rd but a strong – is that this mark had happened on the 30th." *Id.* at 65-66. Allen admitted to being an habitual offender.

[9] Crystal testified that C.W. had a mark on the middle of his right arm and that, when she asked him what happened, he told her that Allen "had whooped him with a belt." *Id.* at 72. She testified she noticed the injury on July 6th, that B.B. showed her what Allen did to C.W.'s arm, and that C.W. had no injuries to his arm prior to that date.

[10] The court entered a Bench Trial Order in which it found that the State had proven beyond a reasonable doubt that C.W. was less than fourteen years of age and Allen was at least eighteen years of age at the time of the offense, that Allen was drinking alcohol and there were beer cans near the couch, that Allen

smelled of alcohol, and that she had a belligerent behavior characteristic of intoxication. The court found that C.W. was too young to be a credible witness, that B.B. was a credible witness, and that B.B. testified that she and C.W. had been playing hide and seek, that C.W. spilled water on Allen, and that she saw Allen hit C.W. with a belt. It further found that C.W. "had a fresh wound on his arm, the bruise was fresh, the welts were fresh, and there was no scarring." Appellant's Appendix at 52.

[11] The court further found that Allen's testimony regarding what occurred is not credible, and that it is possible she was intoxicated to the extent she did not know what she was doing, but that was not a defense. The court credited her testimony that the children were out of control, and it stated that Allen's statement to an officer "that the children were out of control and needed discipline is not a complete admission, but tends to prove that she was attempting to discipline the victim on the date in question," and that Allen "did admit to disciplining the children, including [C.W.], with a belt on a prior occasion." *Id.* at 53. The court found that C.W. "is an active child who had been disobedient and engaged in mischief not only on prior occasions but also . . . on this occasion, which caused [Allen] to attempt to discipline him by striking him with a belt." *Id.* The court stated, "[i]n conclusion, the Court finds beyond a reasonable doubt that on the occasion in question [Allen] was sleeping and intoxicated and the children were playing in an active manner which caused [C.W.] to spill water on [Allen]," that Allen "became angry, grabbed a belt and hit [C.W.] intentionally causing him injury in the form of

bruising and a welt and removing some skin, either whether living skin or a scab," that "[s]he did not hit him in a rude manner or an insolent manner but she did hit him in an angry manner," and that Allen "is guilty of . . . Battery on a Child Resulting in Moderate Bodily Injury." *Id.* at 53-54. The court also noted that Allen admitted to being an habitual offender and found her to be an habitual offender.

[12] In its sentencing order, the court found as aggravating factors that Allen has a history of criminal delinquent behavior,[1] the victim was less than twelve years of age at the time of the offense, Allen committed a crime of violence and knowingly committed it in the presence or within hearing of an individual who was less than eighteen years of age and not the victim of the offense, she recently violated probation, parole, and pre-trial release, and she was in a position of trust. The court found as mitigating factors that there are substantial grounds tending to excuse or justify the crime, though failing to establish a defense, and that Allen has taken advantage of correctional rehabilitative programs while in prison. The court found that the aggravating circumstances outweighed the mitigating circumstances, sentenced Allen to two and one-half years for her conviction for battery as a level 6 felony, and enhanced the sentence by four years for her adjudication as an habitual offender, resulting in an aggregate sentence of six and one-half years. At the sentencing hearing, the

---

[1] At sentencing, the prosecutor stated that, by the State's count, Allen has been arrested approximately seventy-nine times and has approximately twenty-six prior convictions over the last approximately thirty-two years.

court stated that it would consider a motion for modification upon Allen's successful completion of the Purposeful Incarceration program.

## *Discussion*

[13] The issue is whether the evidence is sufficient to sustain Allen's conviction for battery as a level 6 felony. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility or reweigh the evidence. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

[14] Allen contends that she was entitled to employ reasonable force upon her grandchild necessary for appropriate discipline, that the evidence is insufficient to rebut the claim of parental privilege, and accordingly her conviction for battery must be vacated. Specifically, she argues that "[a]n undercurrent in the trial revolved around ongoing discipline" and that she, as grandmother, was "entitled to use reasonable corporal punishment while disciplining the children." Appellant's Brief at 15. Allen states she is cognizant that her defense at trial was that she did not injure C.W. and argues that, "whatever her

defense was at trial, the State is still required to provide sufficient evidence to rebut parental privilege," and that sufficiency of the evidence claims may be raised for the first time on direct appeal. *Id.* at 18. She argues that a fair assessment of the evidence places her in the parent-custodian category, that the court found that C.W. was an active child who had been disobedient and engaged in mischief on prior occasions and also on this occasion, that evidence supports the conclusion that discipline with a belt was and had been an accepted method of conduct correction, and that whether "the chastisement was disproportionate to the offense is of course a matter entrusted to the discretion of the trial court," but that it is worthy of note that Allen testified that the injury to C.W.'s arm occurred in an unrelated incident discovered on July 3, 2015, and that the testimony that the injury was fresh was not supported by medical testimony as C.W. was not injured seriously enough to receive medical attention. *Id.* at 20.

[15] The State maintains that the evidence shows that C.W. was five years old and Allen was fifty-one years old at the time of the incident, that Allen struck C.W. with a belt with sufficient force to strip skin from his arm and to cause bruising and welting, and that this evidence is sufficient to show that Allen battered C.W. The State argues that a parental-privilege claim is an affirmative defense, that Allen never claimed she was justified to batter C.W. under a theory of parental privilege, and that consequently she has waived any such claim on appeal. The State further argues that, even if Allen had asked the trial court to evaluate a claim of parental privilege, such a claim would have failed. It argues

that there is no evidence that Allen had assumed any of the obligations incident to parenting and that Allen was "nothing more than a babysitter." Appellee's Brief at 9. It also states that the defense requires that the battery have been reasonable and that "[t]he State cannot conceive of a disciplinary situation in which striking a five-year-old child with such force that skin is removed and welting and bruising occurs can be reasonable." *Id.*

[16] Ind. Code § 35-42-2-1 governs the offense of battery and, at the time of the offense, provided that "a person who knowingly or intentionally: (1) touches another person in a rude, insolent, or angry manner . . . commits battery, a Class B misdemeanor." Ind. Code § 35-42-2-1 (eff. Jul. 1, 2014) (subsequently amended by Pub. L. No. 65-2016, § 33 (eff. Jul. 1, 2016)). "The offense . . . is a Level 6 felony if . . . (1) The offense results in moderate bodily injury to any other person . . . [or] (3) The offense is committed against a person less than fourteen (14) years of age and is committed by a person at least eighteen (18) years of age." Ind. Code § 35-42-2-1(d) (eff. Jul. 1, 2014) (subsequently moved to subsection (e) by Pub. L. No. 65-2016, § 33 (eff. Jul. 1, 2016)). The State alleged that Allen, "a person at least eighteen (18) years of age, to wit: fifty-two (52) years of age, did knowingly or intentionally touch another person, to wit: C.W., a person less than fourteen (14) years of age, to wit: five (5) years of age, in a rude, insolent, or angry manner, or the offense results in moderate bodily injury to said C.W." Appellant's Appendix at 20. Further, the Indiana Supreme Court has observed that reasonable parental discipline constitutes a

defense to conduct that would otherwise constitute battery. *See Willis v. State*, 888 N.E.2d 177, 181 (Ind. 2008).

[17] The evidence most favorable to the conviction shows that, on July 6, 2015, Allen retrieved a belt and struck C.W. on the arm which resulted in some bruising and some skin being torn from C.W.'s arm. The record also reveals that, at the time of the offense, Allen was over eighteen years of age and C.W. was five years old. Allen does not argue on appeal that she did not strike C.W. or challenge the age of C.W. or her age at the time of the offense. *See* Appellant's Brief at 21 ("Allen understands that the court rejected her assertion that she did not injury [sic] C.W."). The State presented evidence of a probative nature from which the trial court as the trier of fact could find beyond a reasonable doubt that Allen intentionally touched C.W. in an angry manner and that she was at least eighteen years of age and C.W. was less than fourteen years of age.

[18] Having concluded that Allen's conduct amounted to a battery as a level 6 felony, we turn to Allen's contention that the State failed to show that her conduct did not constitute reasonable parental discipline of C.W. Allen does not point to the record to show that she expressly raised the defense of parental discipline privilege below. *Cf. Willis*, 888 N.E.2d at 182-184 (noting that "[t]he defense of parental privilege, like self-defense, is a complete defense" and that, "[i]n response to a charge of battery, Willis raised the defense of parental discipline privilege"); *see* Ind. Trial Procedure Rule 8(C) (providing in part that "[a] responsive pleading shall set forth affirmatively and carry the burden of

proving . . . any other matter constituting an . . . affirmative defense"). To the extent the defense of parental discipline privilege constitutes an affirmative defense, we have previously noted that Ind. Trial Rule 15(B)[2] "provides an escape hatch" and that "[i]f the issue is tried by the implied consent of the parties it is treated as if raised by the pleadings." *Clemons v. State*, 996 N.E.2d 1282, 1285-1286 (Ind. Ct. App. 2013) (citing *Custer v. Plan Comm'n of City of Garrett*, 699 N.E.2d 793, 795 (Ind. Ct. App. 1998) (citing *Puckett v. McKinney*, 175 Ind. App. 673, 676, 373 N.E.2d 909, 911 (1978) (holding that the defendant had not waived an affirmative defense even though he did not assert it in the pleadings as evidence which tended to establish the defense was elicited at trial and admitted without objection and thus that it may fairly be assumed the issue was tried with the implied consent of the parties))), *trans. denied*.

[19] To the extent that the defense of parental discipline privilege was tried with the implied consent of the parties, we conclude the court could find that the defense

---

[2] Ind. Trial Rule 15(B) provides:

> Amendments to conform to the evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

was negated beyond a reasonable doubt and thus that reversal of Allen's conviction is not warranted. *See Clemons*, 996 N.E.2d at 1287 (addressing the defense of necessity to the extent the defense was tried with the implied consent of the parties and concluding that reversal was not warranted on that basis). The Indiana Supreme Court has held that a parent's fundamental liberty interest in maintaining a familial relationship with his or her children includes the right to direct the upbringing and education of children, "including the use of reasonable or moderate physical force to control behavior." *See Willis*, 888 N.E.2d at 180 (citing Ind. Code § 31-34-1-15(1)[3] and noting the statute provides in part, "[t]his chapter does not . . . [l]imit the right of a parent, guardian, or custodian of a child to use reasonable corporal punishment when disciplining the child"). The Court observed that Indiana courts "have construed Indiana Code section 35-41-3-1[4]—the defense of legal authority—as including reasonable parental discipline that would otherwise constitute battery." *Id.* at 181. "A parent is privileged to apply such reasonable force or to impose such reasonable confinement upon his [or her] child as he [or she] reasonably believes to be necessary for its proper control, training, or education." *Id.* at 182 (citing RESTATEMENT OF THE LAW (SECOND) TORTS, § 147(1) (1965)).

---

[3] The section is titled "Effect of chapter on use of corporal punishment or religious practices."

[4] Ind. Code § 35-41-3-1 provides: "A person is justified in engaging in conduct otherwise prohibited if he has legal authority to do so."

> In determining whether force or confinement is reasonable for the control, training, or education of a child, the following factors are to be considered:
>
> (a)      whether the actor is a parent;
>
> (b)      the age, sex, and physical and mental condition of the child;
>
> (c)      the nature of his offense and his apparent motive;
>
> (d)      the influence of his example upon other children of the same family or group;
>
> (e)      whether the force or confinement is reasonably necessary and appropriate to compel obedience to a proper command;
>
> (f)      whether it is disproportionate to the offense, unnecessarily degrading, or likely to cause serious or permanent harm.

*Id.* (citing RESTATEMENT, *supra,* § 150). There may be other factors unique to a particular case that should be taken into consideration, and not all of the listed factors may be relevant or applicable in every case, "[b]ut in either event they should be balanced against each other, giving appropriate weight as the circumstances dictate, in determining whether the force is reasonable." *Id.*

[20] The record reveals that C.W. was Allen's grandchild, that Allen had been drinking alcohol, and that, after C.W. threw a can up and it struck Allen, Allen retrieved a belt and struck C.W. resulting in skin being torn from C.W.'s arm. The evidence supports the determination that Allen struck C.W. with a belt in anger and hard enough to cause bruising and torn skin. B.B. testified that "[i]t looked like his meat was gone" and "[l]ike his skin." Transcript at 12-13.

Deputy Eads testified that "it's almost like a home base type diagram inside of his arm," "[t]hat is where skin was missing or had been removed from his arm," "[i]f you're looking at his perspective some bruising and there was some minor welting," and that "[i]t looked like a fresh injury" in that he did not see any scabbing or healing process. *Id.* at 28. The State also presented photographs of the injury which the court examined.

[21] We conclude that a reasonable trier of fact could find, based upon the testimony and evidence presented, that the force used by Allen was not reasonably necessary or appropriate under the circumstances and disproportionate to the offense and that the defense of parental discipline privilege was negated beyond a reasonable doubt. Reversal of Allen's battery conviction is not warranted on the basis that her conduct constituted reasonable parental discipline. *See Smith v. State*, 34 N.E.3d 252, 254-257 (Ind. Ct. App. 2015) (holding that, despite the child's egregious behavior and the apparent ineffectiveness of previous disciplinary attempts, the evidence was sufficient to show that the force employed by the defendant to discipline the child, which included the defendant using a belt to strike the thirteen-year-old child ten to twenty times on her arms, shoulder, and legs, even where the injuries were not serious enough to require medical attention, was unreasonable and exceeded the privilege allowed to parents); *Hunter v. State*, 950 N.E.2d 317, 321 (Ind. Ct. App. 2011) (concluding the force employed by the defendant in forcefully striking the child with a belt approximately twenty times was unreasonable and thus the evidence was sufficient to rebut the alleged parental discipline privilege).

## *Conclusion*

[22]     For the foregoing reasons, we affirm Allen's conviction for battery as a level 6 felony.

[23]     Affirmed.

Robb, J., and Mathias, J., concur.