

FILED

Feb 02 2018, 9:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mr. William J. Cohen
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Mr. Curtis T. Hill, Jr.
Attorney General of Indiana

Mr. Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

William A. Hart,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 2, 2018

Court of Appeals Case No.
20A03-1708-CR-1865

Appeal from the Elkhart Superior
Court.
The Honorable Teresa L. Cataldo,
Judge.
Trial Court Cause No.
20D03-1309-FD-954

**Sharpnack, Senior Judge**

## Statement of the Case

[1] In Indiana, a parent has a privilege to use physical force to discipline a child. The privilege is not absolute, however. In the field of criminal law the privilege may be raised as a defense, as in this case, to a charge of battery. To succeed with the privilege as a defense, the parent must show that the parent reasonably

believed that force was necessary to discipline the child and that the force used was reasonable in the circumstances.

[2] The defense of parental privilege is similar to the defense of self defense. To convict, the State must prove either that the parent's belief that use of force was necessary was not reasonable or that the force used was not reasonable in the circumstances.

[3] The determination of the reasonableness of using force and the reasonableness of the force used is for the fact finder, in this case a jury. The boundary between what is privileged and what is not is not clearly defined. As Judge Crone stated in his concurring opinion in *Carter v. State*, 67 N.E.3d 1041, 1049 (Ind. Ct. App. 2016), *trans. denied* (internal footnote omitted),

> There may not be any area where reasonable minds differ more in our current society than corporal punishment of children. Attitudes vary dramatically by and within generations and cultures. If the purpose of the criminal law is to put a person on notice of what conduct is proscribed and what is permitted, then how can one's guilt or innocence depend upon how someone else disciplines his or her children when there is no consensus about what is appropriate?
>
> That being said, courts must step in where legislatures decline to tread, so unless and until the General Assembly enacts clearer guidelines for parental discipline (or our supreme court adopts a more workable standard), trial judges and jurors must rely on their experience and judgment to determine when parents cross over the blurry line that separates lawful from unlawful conduct, and appellate courts must give those determinations significant deference. For that reason, I reluctantly concur in my colleagues' affirmance of Carter's battery conviction.

In this case, William A. Hart was convicted of one count of Class D felony battery[1] committed against his son. He appeals contending that the State failed to prove that he knew his daughter was present; that his belief force was necessary was not reasonable; and that the force used was not reasonable. We affirm.

## Issue

The sole issue presented for our review is as follows: whether there was sufficient evidence to support Hart's conviction of battering his son.

## Facts and Procedural History

Hart is a truck driver and is on the road for approximately a month or more at a time. He is home sometimes for a day and at the longest a week before he resumes driving. When he is home, he lives with Melissa Woods, the mother of their three children; two sons, J.H. and P.H., and a daughter, P.H.2. At the time of trial, Woods and Hart had been together for twenty years.

About August 22, 2013, when P.H. was fourteen, he drove Hart's personal pick-up truck to a neighbor's trailer. Hart was not home at the time. After law enforcement investigated and brought P.H. home, police officers told Woods to call them if things escalated to a point that she could not control when Hart came home. Woods made Hart aware of the situation after she had addressed

---

[1] Ind. Code § 35-42-2-1(A)(2)(M)(2013).

the issue with P.H. and the police. Before Hart returned home, Woods had disciplined P.H. for the incident with the truck. As she put it, she had "dealt with the pickup truck situation." Tr. Vol. II, p. 146.

[8] On the morning of September 2, 2013, P.H. was lying on the couch in the living room, and P.H.2 was in her bedroom. Hart yelled at P.H. for having left an electronic cigarette at his friend's house. Woods responded that Hart could have just asked for the electronic cigarette. Hart then yelled at Woods for defending P.H. At some point, according to Woods, P.H. told his father "to shut the f*** up and leave him alone." *Id.* p. 126. Hart walked to the couch and slapped P.H. three times "really hard" on the face and head. *Id.* pp. 218-19. P.H. rolled onto the floor holding his face and crying. Hart then kicked P.H. in the ribs.

[9] Woods called 911 to report the incident, requesting police officers and an ambulance. During the 911 call Hart can be heard in the background yelling at P.H. to stand up, while Woods can be heard telling P.H.2 to return to her room. P.H.2, in 2017, testified at trial that from her room all she could hear was Hart, Woods, and P.H. yelling.

[10] One of the first responders who arrived at the house was Kurt Marschke, Assistant Fire Chief with the Cleveland Township Fire Department. In addition to his duties as assistant fire chief, Marschke was trained as an advanced emergency medical technician. After the premises were secured, he found P.H. in his bedroom on his bed. Although P.H. initially was very quiet,

he told Marschke that he had been hit in the face and kicked in the ribs. Marschke noted that P.H.'s injuries to the right side of his face and to his ribs appeared to be painful because P.H. withdrew from him when he touched those areas to evaluate them. Despite Marschke's efforts to convince her to take P.H. to the hospital, especially since she had called 911, Woods declined to have P.H. taken for further evaluation by a physician.

[11] Nicholas Snead, who at that time of the incident was employed by the Elkhart County Sheriff's Department as a patrol officer, testified that he went to the house at the request of another officer. Upon observing P.H., who was being evaluated by Marschke, he noticed that the right side of P.H.'s face was red, especially in the upper eye area, and it appeared to be starting to swell. Snead testified that the redness was a different color than the rest of P.H.'s natural skin color.

[12] Snead spoke with Hart both at the house and at the jail. Hart gave a voluntary statement to the police after Snead mirandized him.[2] In his statement, Hart claimed that P.H. "got a little smart," gave him a "smug little look," and "pushed the wrong button." Exhibit Vol. II, Exhibit 13. Hart claimed he could not remember exactly what P.H. had said, but characterized it as "just the same old mush." *Id.* He admitted to slapping P.H. "upside the head." *Id.* He stated

---

[2] During trial, Hart objected to the admission of the first part of the recording of the interview and the last part of the interview. The State did not have an unredacted copy of the interview to introduce into evidence. After arguments of the parties, Exhibit 13 was admitted, with the exception of the first and last part of the interview. Only those sections agreed upon by the parties and the trial court were played for the jury.

that, at that point, P.H. rolled off the couch and "start[ed] wailing like a little girl." *Id.* Hart denied kicking P.H. in the ribs, contending instead that P.H. rolled onto his leg to make it seem as if Hart had kicked him. At the end of the part of the interview accessible to the jury, Hart stated that P.H. "steals cars, breaks into houses, nothing happens. I slap him, I get arrested." *Id.* Hart asked the officers if they remembered how many times they had received calls to come to the house because of P.H.'s behavior. *Id.*

[13] On September 16, 2013, the State charged Hart with Class D felony battery. He was tried by a jury in early June 2017. P.H. testified at trial, but contended that he could not remember the events that led to his father being charged. P.H. recently had been in a medically induced coma, which affected his memory. After Hart's sentencing hearing, he was sentenced to three years suspended to probation.

# Discussion and Decision

[14] Hart challenges the sufficiency of the evidence, contending that there is insufficient evidence that he battered his son in the physical presence of his daughter, and that the State failed to disprove his claim of parental privilege as a legal justification for his use of corporal punishment.

[15] To establish that Hart committed the offense as charged, the State was required to prove beyond a reasonable doubt that Hart, a member of the family or household member, knowingly or intentionally touched P.H. in a rude, insolent, or angry manner, committing the offense in the presence of a child less

than sixteen years of age, P.H.2, knowing that P.H.2 was present and might be able to see or hear the offense. Ind. Code § 35-42-2-1(a)(2)(M).

[16] On review of a challenge of the sufficiency of the evidence, appellate courts neither reweigh the evidence nor judge witness credibility. *Leonard v. State*, 80 N.E.3d 878, 882 (Ind. 2017). We will consider only the evidence and the reasonable inferences supporting the verdict. *Id.* Hart's conviction will be affirmed if there is probative evidence from which a reasonable jury could have found Hart guilty beyond a reasonable doubt. *Id.*

[17] First, Hart contends the State failed to prove that the battery was committed in the presence of Hart's daughter, P.H.2, who was six years old. *Manuel v. State*, 971 N.E.2d 1262, 1270 (Ind. Ct. App. 2012) (citing *Boyd v. State*, 889 N.E.2d 321 (Ind. Ct. App. 2008), *trans. denied*), held that the "critical question in determining whether a child is 'present' for purposes of the statute is whether a reasonable person would conclude that the child might see or hear the offense; not whether the child is in the same room as where the offense is taking place." In the present case, P.H.2. testified that she heard the argument between her mother, father, and P.H. Further, the State established through the introduction of the 911 tape that Woods instructed P.H.2. to return to her bedroom while Hart could be heard yelling at P.H. Therefore, the State established that P.H.2., was present for purposes of the statute.

[18] Next, we address Hart's defense of parental privilege. Indiana has recognized "a fundamental liberty interest in maintaining a familial relationship with his or

her child." *Willis v. State*, 888 N.E.2d 177, 180 (Ind. 2008). Encompassed in that fundamental interest is the right of parents "'to direct the upbringing and education of children'. . . including the use of reasonable or moderate physical force to control behavior." *Id.* This concept has been recognized in cases involving children in need of services, per Indiana Code section 31-34-1-15(1) (1997). In those cases, the statute explicitly acknowledges that a parent's right to use reasonable corporal punishment when disciplining the child is not limited. On the other hand, "the State has a powerful interest in preventing and deterring the mistreatment of children." *Id.*

[19] Our Supreme Court has adopted the Restatement (Second) of Torts section 147(1) (1965). *Willis,* 888 N.E.2d at 182. The Restatement provides as follows:

> A parent is privileged to apply such reasonable force or to impose such reasonable confinement upon his child as he reasonably believes to be necessary for its proper control, training, or education.

[20] Further, while other states have codified a parental discipline privilege, Indiana has not yet done so. However, our courts have construed Indiana Code section 35-41-3-1 (1977), the defense of legal authority, ("A person is justified in engaging in conduct otherwise prohibited if he has legal authority to do so."), as encompassing reasonable parental discipline otherwise constituting battery. *Willis,* 888 N.E.2d at 181.

[21] The Supreme Court went on to hold that "the defense of parental privilege, like self-defense, is a complete defense." *Id.* at 182. "In order to negate a claim of

parental privilege, the State must disprove at least one element of the defense beyond a reasonable doubt." *Id.* Therefore, when the State seeks to sustain a conviction for battery where a claim of parental privilege has been asserted, the State must prove either: (1) the force the parent used was unreasonable; or, (2) the parent's belief that such force was necessary to control the child and prevent misconduct was unreasonable. *Id.* The State may refute the defense by direct rebuttal or by relying on the sufficiency of the evidence in its primary case. *Id.*

[22] Our Supreme Court also cited Restatement of the Law (Second) Torts, section 150 (1965), when considering the reasonableness of punishment:

> In determining whether force or confinement is reasonable for the control, training, or education of a child, the following factors are to be considered:
> (a) whether the actor is a parent;
> (b) the age, sex, and physical and mental condition of the child;
> (c) the nature of his offense and his apparent motive;
> (d) the influence of his example upon other children of the same family or group;
> (e) whether the force or confinement is reasonably necessary and appropriate to compel obedience to a proper command;
> (f) whether it is disproportionate to the offense, unnecessarily degrading, or likely to cause serious or permanent harm.

*Id.* at 182.

[23] Therefore, in order to support the defense of parental privilege, the parent must have applied reasonable force and reasonably believed that force was necessary for the purpose of controlling the child. *Id.* In order to establish its case when

presented with this defense, the State must prove either that the force was unreasonable or that the parent's belief that the use of force was needed was unreasonable. *Id.*

[24] On these facts, the jury could reasonably have concluded that the slapping and kicking of P.H. was not to discipline him for past behavior, but was an angry reaction to what P.H. said and how he looked at Hart. As Hart put it, P.H. had "pushed the wrong button." Exhibit Vol. II, Exhibit 13. The jury could conclude that Hart neither had a reasonable belief that force was necessary nor was the force used reasonable.

# Conclusion

[25] In light of the foregoing, we affirm the trial court's judgment.

[26] Affirmed.

Baker, J., and Brown, J., concur.